# Northwestern Traveling Men's Association v. Schauss.

1. FORFEITURES—*Mutual Aid Associations*—Except in cases where the contract provides for a forfeiture of all rights under it, *ipso facto*, on the happening of some event, the good standing of a member in a mutual benefit association will continue until his status has been shown to be changed by some proceeding of the association, taken in pursuance of its rules and by-laws.

2. CORPORATIONS—*Mutual Aid Associations—Rights of Member.*— Where anything remains to be done to determine the attitude of a corporate body toward one of its members, the doing of that thing can only be known through its action as such corporate body.

3. FORFEITURES—*Ipso Facto Under By-laws.*—Unless the law of a mutual benefit association works a forfeiture, *ipso facto*, upon the failure of a member to pay an assessment in time, a notice by the secretary has no such effect, especially so where there is no provision in the law of the association vesting him with the power to determine the status of a member.

4. MUTUAL BENEFIT ASSOCIATIONS—*Ipso Facto Forfeiting Clauses.*— A by-law of the Northwestern Traveling Men's Association provided that, "Upon receiving notice of the assessment, it is the duty of every member to remit the amount promptly to the treasurer of the association. A notice sent to the last address given, shall be considered a legal notification. Any member who does not remit the amount of his assessment within thirty days from the date of notice, shall forfeit his claim to membership and have his name stricken from the roll." *Held*, not to be self-executing, and the fact that a member did not pay the assessment in full in time, did not, *ipso facto*, terminate his membership in the association.

5. MUTUAL BENEFIT ASSOCIATIONS—*Notice of Assessment.*—A reasonable construction of a by-law, providing that notice sent to the last address shall be considered a legal notification in its entirety, and one that the contracting parties may well have intended, is, that a notice sent by mail to the last given address of the member, allowing a reasonable and usual time for it to reach its addressed destination by due course of mail, would constitute a sufficient and legal notification, and be considered as received by the member at the expiration of such time, and that any member who failed to remit within thirty days thereafter might be treated as in default.

6. MUTUAL BENEFIT ASSOCIATIONS—*Substitution for Actual Notice, etc.*—When a substitution for an actual notice is provided, nothing should be left to inference, in order to determine whether such provision has been complied with. A substantial compliance with the required method of notice, where one is provided to take the place of actual notice must always be shown in cases where a forfeiture is claimed by reason of such a substituted method.

7. FORFEITURES—*Of Substantial Rights.*—Forfeitures of substantial rights, or of valuable property interests, are not favored in law or in equity and will not be supported except upon a clear showing of default.

8. MUTUAL BENEFIT ASSOCIATIONS—*Manner of Giving Notice of Assessment.*—The provisions of a by-law, that a notice sent to the last given address of the assured is to be a legal notification, merely prescribes a method of serving the notice in substitution of personal service, and not that notice shall, upon being "sent," date from the day of sending. Something more than a mere sending is implied. It should be sent by a recognized mode of conveyance in order that delivery in a regular course may be presumed.

9. MUTUAL BENEFIT ASSOCIATIONS—*Service of Notice of Assessments.*—A sufficient compliance with the by-law of a mutual benefit association, providing for notice to members, consists in the depositing of the notices, properly addressed, in the postoffice, but the association must show that the notice was addressed as provided by the contract between the parties, and allow a reasonable and usual time for it to reach the member.

10. MUTUAL BENEFIT ASSOCIATIONS—*Remittances in Time—Application of the Rule.*—S. was a member of the Northwestern Traveling Men's Association, in good standing up to August 20, 1887. It was contended that he forfeited his membership on that date by failing to pay $2 of an assessment of $6, theretofore levied by the association. He paid the two dollars, but it was not received by the association until four days after the time for payment had expired. The notice of the assessment bore no date, but was probably sent on the 20th day of July. S. had $4 to his credit in the association. *It was held,* that the remittance was made in due time.

11. MUTUAL BENEFIT ASSOCIATIONS—*Can Not Keep a Member's Money and Insist That His Membership Is Lost.*—A member of a mutual benefit association made a remittance of his assessment; it was claimed that it was received a few days late by the association, and notice was sent him that his membership was lost. He then demanded a return of his money, which was refused. *It was held,* that the association had no right to retain his money after that and insist that his membership was forfeited.

**Memorandum.**—Action on a mutual benefit certificate. Appeal from the Circuit Court of Cook County; the Hon. CHARLES R. STARR, Judge, presiding. Heard in this court at the March term, 1893, and affirmed. Opinion filed June 14, 1893.

The opinion states the case.

IRA W. BUELL, attorney for appellant.

WEIGLEY, BULKLEY & GRAY, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The question in this cause is whether John Schauss was a member of appellant company, in good standing at the time of his death. It is admitted by appellant association that he was a member in good standing up to August 20, 1887, but it is contended that he forfeited his membership on that date by failing to pay $2 of an assessment of $6 theretofore levied by the association. He did pay the $2, but it was not received by the association until the 24th day of August, 1887, and it was not sent by Schauss until the 23d of August, 1887. The association, however, retained the money and still retains it, but its secretary notified Schauss that the $2 was received too late, and his membership was therefore forfeited. It is conceded by appellant that if Schauss did not forfeit his membership on August 20th, that then he did not forfeit his membership between that date and the day of his death, as there is no pretense that the association sent him any further notices.

It is insisted by appellee that there was no ground under the by-laws of the association to declare Schauss suspended on that date, and that, as a matter of fact and of law, under the by-laws of the association he was not suspended.

John Schauss became a member of the association December 16, 1876, and died April 21, 1888.

At the time the assessment notice was sent to Schauss he had $4 to his credit on the books of the association, and if the $2 remitted by him had been received in time, there would have been no ground to claim a forfeiture or suspension of membership against him.

The notice stated that the assessment would close on August 20, 1887.

Section 2, of article 4, of the constitution of the association provides: " Upon receiving notice of an assessment it is the duty of every member to remit the amount promptly to the treasurer of the association. A notice sent to the last address given shall be considered a legal notification. Any member who does not remit the amount of his assessment

within thirty days from the date of notice, shall forfeit his claim to membership and have his name stricken from the roll; but any such person may again become a member upon payment of all dues, subject, however, to the approval of the board of directors.

It will be seen that in case of non-payment of an assessment within thirty days from the date of notice, the member so defaulting "shall forfeit his claim to membership, and have his name stricken from the roll."

The provision is different from the law of the order shown in Hansen v. Supreme Lodge, etc., 40 Ill. App. 216. There the language was, "failing which he shall stand suspended," and it was held to be self-executing.

In the Hansen case, by his default he thereby stood suspended. Nothing remained to be done to carry into effect the result of his default. Is that the effect of the language of section 2 above quoted? It must be held to be self-executing, or Schauss was never lawfully suspended; for it is not pretended that the board of directors of the association, in whom was vested the management of its affairs, took any action to declare his membership forfeited. All that was done was the act of the secretary of the association in notifying Schauss that his remittance had come too late and that he was in consequence suspended.

But, unless the law of the association worked a forfeiture, *ipso facto*, upon the failure of a member to pay in time, such a notice by the secretary had no effect. There is no provision in the law of the association vesting the secretary, or any other single officer, with power to determine the status of a member.

Article 3, Sec. 3, of the constitution of appellant, which provides that the secretary shall "report all delinquencies in payment to the board of directors," confers no power upon the secretary to declare the result or effect of non-payment, but seems to require affirmative action by the board in case of a delinquent, before any effect can be given because of his delinquency.

"Except in cases where the contract provides for a for-

feiture of all rights under it, *ipso facto*, on the happening of some event, the good standing of the member in the society will continue until his status in the society has been shown to be changed by some proceeding of the society taken in pursuance of its rules and by-laws." High Court, etc., v. Zak, 35 Ill. App. 613.

Where anything remains to be done to determine the attitude of a corporate body toward one of its members, that can only be known through its action as such corporate body. Independent Order, etc., v. Zak, 136 Ill. 185.

Counsel for appellant, however, claims nothing through action by the board of directors or by the secretary, but insists that the mere fact of non-payment within thirty days from the date of notice, constituted in itself a forfeiture of the membership.

We are aware of a considerable lack of harmony in the authorities as to the true construction to be given to kindred clauses having for their object the forfeiting of memberships for non-compliance with the rules of similar societies, but we know of no case where, the court being in doubt owing to an ambiguity or uncertainty in the law of the society, which constitutes a part of the contract of the parties, that the rule has not been applied that all ambiguities shall be resolved against the society and in favor of the beneficiary.

If, therefore, there were no other question in this case, we should be inclined to hold, although not without much hesitation, because of the difference in authority referred to, that the clause in question is not self-executing, and the fact that Schauss did not pay the assessment in full on August 20th, did not, *ipso facto*, terminate his membership in the association.

We are aided in reaching this conclusion by the construction put upon section 2, by the appellant association itself. Its secretary, Mr. Hinman, testified that if Schauss "had purchased a money order from the post office on the 18th or 19th and mailed it on the 23d, it would have been credited to him;" and again, he testified: "We received other remit-

tances for that assessment long after that from persons that were far away."

It should not be inferred from anything we have said that Schauss did not remit the $2 in time. Upon that question section 2, *supra*, provides: "Upon receiving notice of an assessment, it is the duty of every member to remit the amount promptly to the treasurer of the association. A notice sent to the last address given shall be considered a legal notification. Any member who does not *remit* the amount of his assessment within thirty days from the date of notice shall forfeit his claim to membership," etc.

The remittance was made by Schauss from Milwaukee, Wisconsin, on August 23d, by postal order of that date, and was received by the association on August 24th.

The notices of assessment sent out bore no date, and there is no evidence, except such as arises from the probable fact that the notice to Schauss was deposited in the mail in Chicago on July 20th, and that he made a remittance on August 23d, as to when the particular notice addressed to Schauss was received by him.

We say "probable fact" of mailing on July 20th, because of the very loose proof made on that subject.

There was no attempt made to prove what the "last address given" of Schauss, was. It is pure conjecture as to whether it was Milwaukee, Wisconsin, or San Francisco, California. And it is very material to know what distance the notice had to travel by mail, if, as we shall show, the "date of notice" means, not the date the paper bore, or the date it was deposited in the post office, but the date when in due course of mail it would reach its addressed destination.

If, in this case, the notice was mailed late on July 20th, and had to travel three or four days before it could reach Schauss at his "last address given," the remittance made by him on August 23d was within thirty days from the date of notice to him, and was in time to preserve his membership from forfeiture.

The unaided fact that he remitted from Milwaukee, is by

no means conclusive that the notice was addressed to him at that place, and may be said to prove nothing more than that he had received the notice on or before August 23d.

The whole of section 2 must be read together in order to ascertain what the contract was as regards notice, and payment.

The first clause would by itself mean that the receipt of actual notice by the member, preceded his duty to remit, but considered in connection with what follows, and the circumstances of the case, we would not be warranted in holding that actual notice to the member is necessary. It would render the working of societies of this kind, with their hundreds, or thousands, of widely scattered members, impracticable, to so hold. A reasonable construction of the section in its entirety, and one that the contracting parties may well have intended, is, that a notice sent by mail to the last given address of the members, allowing a reasonable and usual time for it to reach its addressed destination by due course of mail, would constitute a sufficient and legal notification, and would be considered as received by the member at the expiration of such time; and that any member who should not remit within thirty days thereafter would be treated as in default. Such construction may be thought to be somewhat at variance, in the matter of fixing the time from which the notice in such cases should date, with what seems to have been held by this court in the Besterfield case, and by the Supreme Court in the Palmer case; but we think the difference is more apparent then real. There it was, in substance, said that the date of the notice means the day it is delivered or received, and not the date written in the notice, or the date it is mailed. Illinois Order, etc., v. Besterfield, 37 Ill. App. 522; Protection Life Ins. Co. v. Palmer, 81 Ill. 88.

The Besterfield case is expressly based upon the Palmer case, and unless, in the latter case, it was intended to hold that actual notice must come to the member before the time would begin to run, such would not be the correct understanding of what was intended to be held by this court in the former case.

We infer that the Supreme Court meant only to hold that something that would amount to either presumptive or actual notice, must be shown, for, on page 95 of the opinion, in considering the effect to be given to an agreement in the policy that a notice directed to the address of the assured, as it appeared on the books of the company, and deposited in the post office, should be deemed legal notice, it was decided that the acts of directing the notice and depositing it in the post office, would not fix the time when the notice was given, but that "a reasonable time would still be required for the notice to reach the assured."

The reasonable implication from such language is that the notice need not be actually received by, or delivered to, the member, but that it would be considered as having been received by him after the lapse of "a reasonable time" for the notice to reach him by due course of mail, after being deposited in the post office.

We can not assume, in the absence of clear expressions to that effect, that the Supreme Court meant to hold that this class of associations, whose memberships number thousands, would be required to prove actual delivery to each member of assessment notices, when, by their laws, a general method of service is provided for, other than personal service.

The Supreme Court of Kentucky has laid down, in plain words, what seems to us to be the true rule, and one that is not inconsistent with any holding by this court, or the Supreme Court, in National Mutual Benefit Association v. Miller, 85 Ky. 88.

The provision there about giving notice was nearly identical with the one in the case at bar, and it was there said:

"The time within which payment is to be made is not to be computed from the actual date of the notice, or from the day it was mailed to the member, but, when sent by mail, from the time at which the notice would, in the regular course of the mail, be received by the member."

Accepting such to be the correct rule by which to determine when the notice in this case was received by Schauss, we are confronted by a lack of proven or admitted facts to which to apply it.

Beyond the fact that the notice probably was mailed on July 20th, we have nothing to show when it was received by Schauss, except that he made a remittance on August 23d. It is not shown to what address the notice was sent, nor is it made to appear what the last given address of Schauss was on the books, or other records of the association. Such proof was within easy reach of the appellant, and its absence should not count in appellant's favor.

Article 1, section 1 of the by-laws, provides:

" He (the member) shall furnish the secretary of the association with his full name and address, shall notify him of every permanent change in the same, and in view of any long-continued absence from the place of his address, shall designate some person to whom all notices of the secretary may be sent during his absence."

Schauss was a " traveling man." . Presumably he had complied with the requirements of that by-law, for he had been a member of the association for nearly twelve years, and there is no pretense but that the association had his address.

What that address was, however, nothing in the record discloses. Conjecture as to what it was can not be made to take the place of proof in so important a matter.

When a substitution for actual notice is provided, nothing should be left to inference in order to determine whether it has been complied with. A substantial compliance with the required method of notice, where one is provided to take . the place of actual· notice, should always be shown in cases where a forfeiture is claimed by reason of such a substituted method.

Forfeitures of substantial rights, or of valuable property interests, are not favored, and will not be supported except upon a clear showing of default.

The provision that a notice sent to the last given address of the assured shall be a legal notification, merely prescribes a method of serving notice in substitution of personal service, and not that notice shall, upon being " sent," date from the day of sending. Something more than a

mere sending is implied. It should be sent by a recognized mode of conveyance, in order that delivery in regular course may be presumed. No one would contend that the dis. patching of several thousand notices by the hands of a messenger boy would operate to excuse proof of actual delivery. We have here held that a sufficient compliance with that provision consists in the depositing of the notices, properly addressed, in the post office; but it still remained for the appellant to show that the notice was addressed as provided by the contract between the parties, and to allow a reasonable and usual time for the notice, so addressed and deposited in the mail, to reach the member. He was entitled to thirty full days after the notice would be presumed to have reached him, within which to make remittance. But there is nothing in the record from which we can say that the notice was addressed as required by the law of the association, which was the contract between the parties, or that thirty full days elapsed between the time when it should, in regular course, have reached its destination, and the date on which Schauss made the remittance.

We are, therefore, unable to say the court below erred in finding that the remittance was sent in due time.

As we said in the Besterfield case, *supra*, "the verdict must be taken as determining that the assessment was paid within thirty days from the receipt of notice," and that Schauss was, therefore, in good standing at the time of his death.

One other point remains to be considered.

The association not only retained the $4 which stood credited to Schauss on its books at the time the assessment in question was made, but also the $2 remitted by him on August 23d, notwithstanding it claimed a forfeiture of his membership because of his failure to pay the assessment, for the payment of a part of which the association itself appropriated the $4. Mr. Hinman, the secretary, testified: "He" (referring to Schauss) "had paid $4 on the assessment on which he became a delinquent. He only owed on that matter."

Schauss, in his letter to Hinman, the secretary, dated September 28, 1887, after being informed that he had lost his membership, because his remittance of $2 was received too late, demanded a return of his $6, but no part of the $6 belonging to him, and held by the association, was ever returned or offered to him.

Hinman testified : " The association still has the $4 we had on hand, and the $2 which he sent us and which came too late, and we have never returned it to him;" * * * "the association holds the $2 subject to order." * * * " The reason the $2 that came too late was not returned to Mr. John Schauss was because it was held subject to his order—subject to his medical examination;" and Mr. Robertson, appellant's cashier, testified : " The money stands on our ledger to the credit of John Schauss; it was put in the bank with the rest of the funds."

Although there were three death losses—Nos. 143, 144 and 145—which the assessment was made to cover, there was but one assessment of $6 to cover the three losses, and but one notice.

On a part of the notice sent to Schauss, there was added, and signed by Hinman, the secretary and treasurer, the following :

" Proofs of the above deaths having been furnished, the board of directors have ordered that an assessment of $6 be issued July 20th, closing August 20th, to cover them."

On the part of the notice which was returned to the association, as required, when Schauss remitted the $2, there was stamped :

" There is $2 due from you on this assessment."

Hinman wrote Schauss on August 24th :

" Your remittance of $2 to cover assessment 143, 144 and 145 came to hand this A. M.   Said assessment closed on Saturday last, the 20th."

The fact that Schauss wrote of the assessment, describing it as No. 145, when he remitted the $2, did not give to the assessment a character it did not possess.   The question is, what did the association by its acts make the assessment, and what was it in fact ?

We think the notice itself, of the assessment, including what accompanied it, as shown, together with what followed, makes it clear that there was not an assessment for each of the three death losses, but that there was only one assess. ment of $6 to cover them all.   When it was that this plan of appropriating the $4 which the company had on hand to the credit of Schauss, to the payment of his share of death losses 143 and 144 was conceived or carried into effect is not apparent from anything we are able to find. That it had not been done at the time the notice was sent out is clear, from the fact that the notice specified the three death losses by numbers, and stated that an assessment had been made to cover them all, and that $2 remained due from Schauss on them all, and not that the $4 paid Nos. 143 and 144, and that $2 was due on No. 145.

Hinman, it is true, testified:

" He (referring to Schauss) had already paid 143 and 144, and we stamped on this notice ' There is $2 due from you on this assessment.'"    But such a statement, in view of what has been said with reference to the notice and what followed it, seems to be the statement of a conclusion drawn from something done by the association subsequent to August 20th, rather than the statement of a fact occurring before that date.

He says nothing of the kind, but quite the contrary, in his letter of August 24th, to Schauss.

In his testimony, Mr. Hinman does not profess to say when it was that Schauss "had already paid 143 and 144."

We consider it to be a fair inference, gathered from all the evidence, that it was not until after the association, or Mr. Hinman, its secretary, had elected to treat Schauss as a delinquent, and when the accounts of the association with the respective death losses came to be entered upon its books after the assessment had been closed, that the money on hand to the credit of Schauss was appropriated or applied to the settlement of his share of death losses 143 and 144, exclusively, thereby leaving him in apparent default as to the whole of death loss No. 145, and to that loss alone.

This, we think, the association had no right to do. The assessment was an entire one, and Schauss was either in default as to it as a single assessment, or not at all. Probably the association could not be required to accept and apply the $4 as a two-thirds payment of the whole assessment, and give to Schauss any advantage which such an acceptance and application might, possibly, confer upon him, because of there being no authority under the by-laws to declare a forfeiture for a failure to pay part of one assessment; but, on the other hand, neither could the association keep his money and at the same time make of him a delinquent.

Schauss appears to have made his demand for a return to him of the whole $6 in apt season. There appear to have been negotiations pending between him and the association for a revival of his membership all along during the month from August 24th to September 28th, at which time he wrote for a return of the $6 and he would then be out of the association.

The association had no right to retain his money after that and insist that his membership was forfeited.

The whole record considered, the judgment of the Circuit Court will be affirmed.