LOUISA PERINE, as Guardian of Edward G. Perine, *vs.* GRAND LODGE
OF ANCIENT ORDER UNITED WORKMEN.

Argued Dec. 11, 1891. Decided Jan. 18, 1892.

**Parties to Action—Guardian and Ward—Amendment.**—A suit to recover on a cause of action in favor of a minor should be brought in the name of the infant by his guardian or next friend; but, if brought in the name of the guardian, the court may amend the record by inserting the name of the ward as plaintiff.

**Mutual Benefit Association Sued by the Name it Assumed.**—Where the defendant has assumed to make the contract on which the action is brought by the name by which it is sued, it is immaterial, so far as the plaintiff's right to recover is concerned, whether it is a corporation or a mere voluntary association.

**Irregularities in Organization Waived by Accepting Dues.** — By accepting and retaining the dues or fees of an applicant for a beneficiary certificate, with knowledge of the facts, the defendant waived all irregularities in the organization of the subordinate lodge and in the admission of the applicant to its membership.

.Defense—Fraudulent Representation—Change on the Trial to Breach of Warranty—Refused.—Where a party frames his pleading and introduces his evidence upon one theory of the law applicable to his cause of action or defense, it is not error for the court to refuse to submit the case to the jury upon an entirely different theory, when such change of position might unfairly prejudice the opposite party.

Interest in the Event — What will Disqualify Witness to Conversations of Deceased.—To render a person incompetent as a witness, under 1878 G. S. ch. 73, § 8, he must have some legal, certain, and immediate interest in the event of the cause itself, or in the record, as an instrument of evidence for or against himself; and the burden is on the party objecting to the witness to make the incompetency to clearly appear.

Subsequently Admitted Member not Shown Interested in the Event of the Action.—*Held*, that it does not clearly appear from the evidence that, in an action against the grand lodge of the defendant order to recover insurance on the life of a deceased master workman, a member of a subordinate lodge, who became such after the death of the deceased, is thus interested in the event of the suit.

Appeal by defendant from an order of the district court of Hennepin county, *Canty*, J., made July 17, 1891, refusing a new trial.

The action was brought by Louisa Perine, as general guardian of Edward G. Perine, an infant, against the Grand Lodge of the Ancient Order United Workmen, State of Minnesota, to recover $2,000 and interest on account of the death, on August 15, 1886, of his father, Sullivan C. Perine, while a member of Calhoun lodge No. 92, Minneapolis. This lodge was first instituted June 30, 1886, by a deputy grand master workman, who was authorized to institute lodges pursuant to defendant's constitution. Sullivan C. Perine was at that time one of the members who formed this new lodge. Irregularities occurred in its organization, and another deputy was sent by the grand master workman to investigate and correct any errors. The lodge was by him instituted again on July 21, 1886, under the same name, and with nearly the same members who participated in the first institution. A charter and certificates were thereupon issued to the lodge, but Sullivan C. Perine was absent when the new institution occurred, and did not participate, nor was any certificate issued

to him.    He had on June 30, 1886, paid in his initiation fee, $6.66, and certificate fee, $3, and for the beneficiary fund, $1, which sums were accepted, entered in the books of the order, and retained. His name was entered in the roll book of members, and remained there until after his death.

On April 26, 1879, there was filed for record, in the office of the secretary of state, articles of incorporation of the Grand Lodge of the Ancient Order United Workmen, State of Minnesota, purporting to be made pursuant to 1878 G. S. ch. 34, § 205; but such articles were not recorded in the office of the register of deeds of Ramsey county, in which county the grand lodge was by those articles located.    It was proved on the trial that defendant had, in its answer in another suit by Mason against it, admitted it was incorporated and had contracted in that name.    Defendant order is a fraternal and beneficiary association, one of its objects being to provide, by assessments upon the members, a fund to be paid, at the death of a member in good standing, to his family or such one as he has designated.    A prerequisite to admission to membership is a satisfactory medical examination and personal and family history.    Each applicant is required to give a written answer to certain questions submitted to him.    S. C. Perine made such application in which the questions were answered.    Several of these answers were found to be untrue.    The following are some of the questions and answers:

"*Question.* Is your father living?    If not living, at what age and of what disease did he die?

"*Answer.* No.    26.    Bronchitis.

"*Q.* Is your mother living?    If not living, at what age and of what disease did she die?

"*A.* No.    25.    Applicant, when very young, (two years,) was taken among strangers, and don't know of what disease she died.

"*Q.* Have you ever been predisposed to or had any of the following named diseases:  Bronchitis, chronic cough, consumption, disease of the lungs, spitting of blood?

"*A.* No.    I hereby certify that the above answers are correct."

The trial took place April 23, 1891.    William B. St. Cyr was called by the defendant as a witness, and stated that he had a con-

versation in May, 1886, with Sullivan C. Perine about his health and physical condition. The witness was at the time of the trial a member of the order, and of Calhoun Lodge No. 92, but was not a member when the conversation took place or when Perine died. Defendant offered to show by the witness that in the conversation Perine stated that his mother died of consumption, and that he had consumption, and expected to die of it, and came west for his health, and on that account. This evidence was excluded on the ground that the witness was incompetent, under 1878 G. S. ch. 73, § 8, in that he was interested in the event of the action. No evidence of his incompetency was given, except the constitution of the grand lodge, and his statement that he was at the date of the trial a member of the order of Calhoun Lodge No. 92.

Defendant by its answer denied that Sullivan C. Perine was ever a member of the Order of United Workmen or of Calhoun Lodge No. 92, and denied that said lodge existed prior to July 21, 1886. It alleged that on June 8, 1886, Perine made application to enter the order, and was required to answer the foregoing questions. That his answers were false, and were fraudulently made, with intent to deceive and defraud defendant, and thereby gain admission to the order and receive its benefits. The answer did not admit that defendant made any contract with deceased, or allege that the questions and answers formed a part of such contract, and were warranties.

Defendant, by its 4th, 5th, and 6th requests, asked the judge to charge the jury that it was a sufficient defense for it to show that the answer to any one of the above questions was false; and, if the answer to any one of them was not true, the plaintiff could not recover, no matter whether such untruthfulness was caused by design on the part of Sullivan C. Perine to defraud the defendant, or from accident or mistake on his part. This the judge refused, but charged that if Perine made those representations knowing them to be false, or if he did not in good faith believe them to be true, or if he was mistaken or misinformed by reason of his own negligence or carelessness, plaintiff could not recover. The jury returned a verdict for plaintiff, and assessed the damages at $2,602.74.

The defendant moved for a new trial, and, being denied, appealed from the order.

*Adams & Pattee, E. Southworth,* and *Jos. A. Eckstein,* for appellant.

Louisa Perine is the plaintiff, but the cause of action stated is that of her ward. At the trial defendant moved for judgment on this ground. A recovery in this action by her would not be a bar to a subsequent action brought by the ward. 1878 G. S. ch. 66, § 30. *Fox* v. *Minor,* 32 Cal. 119; *Emeric* v. *Alvarado,* 64 Cal. 593.

The defendant is not a corporation. The pleadings in the *Mason Case* were not proof of incorporation, nor is an association like the defendant a partnership. Nibl. Mut. Ben. Soc. § 92.

The court erred in excluding the testimony of St. Cyr as to conversations with Sullivan C. Perine in May, 1886, regarding his health, and the cause of his mother's death. Defendant's constitution was then in evidence showing that assessments to pay any recovery in this action could be levied only upon those who were members at the time of Perine's death. 1878 G. S. ch. 73, § 8, should be strictly construed. The party objecting must show that the witness is within its terms. *Chadwick* v. *Cornish,* 26 Minn. 28; *Marvin* v. *Dutcher,* Id. 391; *In re Brown,* 38 Minn. 112; *Darwin* v. *Keigher,* 45 Minn. 64.

The refusal of the court to charge the jury as requested in defendant's 4th, 5th, and 6th requests was error. Bac. Ben. Soc. §§ 206–212; *Carpenter* v. *American Ins. Co.,* 1 Story, 57; *Wall* v. *Howard Ins. Co.,* 14 Barb. 383; Phil. Ins. §§ 537, 542.

*Merrick & Merrick,* for respondent.

The guardian was the proper party plaintiff. 1878 G. S. ch. 59, § 29. *Price* v. *Phœnix Mut. Life Ins. Co.,* 17 Minn. 497, (Gil. 473;) *Fox* v. *Minor,* 32 Cal. 112, 121.

If defendant be not a corporation *de jure,* the association is, as between it and its members, to be regarded and treated as a corporation *de facto. Foster* v. *Moulton,* 35 Minn. 458; *Jewell* v. *Grand Lodge A. O. U. W.,* 41 Minn. 405; *Sheufler* v. *Grand Lodge A. O. U. W.,* 45 Minn. 256.

St. Cyr was interested in the event, and disqualified as a witness from giving evidence of conversations of deceased. 1878 G. S. ch.

73, § 8; *Beard* v. *First Nat. Bank*, 39 Minn. 546; *Darwin* v. *Keigher*, 45 Minn. 64; *Redding* v. *Godwin*, 44 Minn. 355; *Farmers' Union Elevator Co.* v. *Syndicate Ins. Co.*, 40 Minn. 152.

If there is evidence reasonably tending to support the verdict, this court will not reverse the order of the district court refusing a new trial. *Hicks* v. *Stone*, 13 Minn. 434, (Gil. 398;) *Hinkle* v. *Lake Superior & M. Ry. Co.*, 18 Minn. 297, (Gil. 270;) *Ohlson* v. *Manderfeld*, 28 Minn. 390; *Jacobson* v. *Williams*, 34 Minn. 22.

MITCHELL, J.   This action was brought by and in the name of Louisa Perine, probate guardian of the person and estate of Edward G. Perine, a minor, to recover on a cause of action in favor of her ward, as beneficiary of a contract of insurance upon the life of his father, alleged to have been made by defendant with the father as a member of a subordinate lodge of the order.   The action should have been brought in the name of the minor.   The rule at common law and in equity was that an infant had to sue in his own name, but by his guardian or next friend, and this has not been changed by statute.   The infant is the real party in interest, and the general statutory rule is that every action must be prosecuted in the name of the real party in interest.   1878 G. S. ch. 66, § 28, provides that an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute may sue without joining with him the person for whose benefit the action is prosecuted.   But a guardian appointed by the probate court is not a trustee of an express trust, but an officer of the court.   There would seem to be no good reason why the statute should not have placed a guardian, as respects his capacity to sue, upon the same footing as an executor or administrator, but it has not done so in any case, unless, possibly, under 1878 G. S. ch. 66, §§ 33, 34, in the case of the seduction or injury of the ward,—a question which we have no occasion to consider here.   Section one hundred and forty-eight (148) of the Probate Code (Laws 1889, ch. 46) provides that every guardian shall demand, sue for, and receive all debts due his ward.   The same provision was found in 1878 G. S. ch. 59, § 29.   But this was merely a re-enactment of the common-law rule that a suit by an infant must be brought by his guardian.   The statute does not say that the guardian shall bring

the suit in his own name. But while this action should have been brought in the name of the ward, yet the guardian is a proper party to the record. He is really the active party who institutes the suit, and has the entire control of its prosecution. In such a case we have no doubt of the power of the court, either before or after judgment, in furtherance of justice, to amend by inserting the name of the ward as plaintiff. 1878 G. S. ch. 66, § 124. The only person who has any control over the action is already in court and a party to the record. The only object of inserting the name of the infant as plaintiff is that the judgment in the action may be a bar to any subsequent action by him or in his name.

2. The defendant held itself out, and assumed to do the business in hand, as an association or organization under the name by which it is sued, and hence, so far as plaintiff's right of recovery is concerned, it is wholly immaterial whether it was a corporation *de jure*, a corporation *de facto*, or a mere voluntary association. This disposes of the assignments of error relating to the question of the corporate character of the defendant.

3. Many of the assignments of error have reference to the alleged invalidity of the organization of the subordinate lodge of which the deceased is claimed to have been a member, and the consequent irregularities in his admission as a member. These alleged errors all become unimportant, in view of the fact that it clearly appears that defendant, with knowledge of all the facts, retained the money which was sent by or in behalf of the deceased as a member of the subordinate lodge, accompanied by his medical examination and application for a beneficiary certificate. This constituted a waiver of all irregularities in the organization of the subordinate lodge or in the admission of the deceased to its membership. In view of this, the admission of the resolutions of condolence passed by the subordinate lodge after Perine's death (which were clearly incompetent) was error without prejudice, as the only effect of them was to show that the subordinate lodge recognized his membership at the time of his decease.

4. Evidence as to the general reputation of the cause of the death of the mother of the deceased in the neighborhood where she died

was properly excluded.   It is not claimed that this would be competent evidence of the fact, but that, inasmuch as Perine was raised and lived in the same neighborhood, it was competent for the purpose of showing Perine's knowledge of the cause of his mother's death, there being other evidence of the fact that she died of consumption.   The defendant did not offer to show by any direct evidence that this neighborhood reputation ever came to Perine's knowledge, but it is contended that there was a presumption to that effect arising from the fact that he lived in the same neighborhood.   Conceding that any such presumption could, under any circumstances, be indulged in, it is evident that it could not be in this case.   The inquiry as to this neighborhood reputation was not directed to any particular time, but it must be presumed to have reference to the time of the mother's death; and it is not to be supposed that the disease of which a person died would continue to be the subject of public or neighborhood talk for years afterwards.   Now, it appears that, at the time of his mother's death, Perine was an infant of the age of from three to five years, entirely too young to be presumed to have known anything about neighborhood reports at that time.

5. The evidence as to the number and ages of Perine's uncles and aunts was, so far as we can discover, entirely irrelevant to any issue in the case, but we fail to see how its admission could have been prejudicial.

6. Defendant's 4th, 5th, and 6th requests were properly refused because inconsistent with the theory of the law upon which it framed its answer and tried the cause.   The defense set up in the answer was that Perine, in his medical examination, made false and fraudulent answers to the questions put to him, with intent to thereby deceive and defraud the defendant.   The evidence proceeded upon the same theory.   In other words, the pleading was framed and the cause tried upon the theory that it was incumbent on the defendant, in order to maintain its defense, to prove, not only that the answers were untrue in fact, but also that Perine knew them to be false when he gave them.   But the requests asked for and refused proceeded upon the theory that the answers were in the nature of warranties, and that, if they were untrue in fact, no recovery could be had, without

regard to whether they were made with a fraudulent intent or under an honest belief that they were true. It is immaterial which is the correct view of the law, for a party cannot frame his pleading and introduce his evidence upon one theory, and then shift his ground, and ask to have the case submitted to the jury upon an entirely different one, to the surprise and possible prejudice of the other party. How such a course, if permitted, might prejudice the opposite party, is illustrated in the present instance; for, if the case had been tried upon the idea that the answers were warranties, the plaintiff might have shaped her rebutting evidence very differently from what she did, in view of the theory of the law upon which the defendant had proceeded.

7. Under the view of the law on which the case was tried, we are unable to say that the verdict was not justified by the evidence, for, while it tended very strongly to prove that one or more of Perine's answers were untrue in fact, the evidence was not such as to require a verdict that he knew them to be untrue or did not honestly believe them to be true.

8. There was, however, one prejudicial error committed on account of which a new trial must be granted. We refer to the exclusion of the evidence of St. Cyr on the ground that, by reason of interest in the event of the suit, he was incompetent to testify to conversations with or admissions of Perine in his lifetime. 1878 G. S. ch. 73, § 8. Undoubtedly the statute uses the expression "interested in the event" of the action in the sense in which it was understood at common law. While the earlier cases on the subject of the incompetency of witnesses on the ground of interest proceeded upon very subtle grounds, yet the rule laid down as long ago as *Bent* v. *Baker*, 3 Term R. 27, had been generally adopted and followed, viz., that to render a person incompetent as a witness on the ground of interest he must have some legal, certain, and immediate interest, either in the event of the cause itself, or in the record, as an instrument of evidence for or against him in some other action. The interest must be pecuniary, certain, direct, and immediate, and not an uncertain, contingent, remote, or a merely possible interest. 1 Greenl. Ev. §§ 386–391; *Marvin* v. *Dutcher*, 26 Minn. 391, (4 N. W. Rep. 685.)

Moreover, competency is always presumed, and the burden is upon the party objecting to a witness to make his incompetency to clearly appear. St. Cyr had no interest in the record in this case as an instrument of evidence. Therefore, if he was incompetent, it must have been because of an interest in the event of the cause itself. He was not a member of the grand lodge, but of a subordinate lodge, and became such *after the death of Perine*. Many of the provisions of the constitutions, both of the grand lodge and of the subordinate lodges, are very vague and obscure, and it is very difficult to ascertain from them just what the liabilities or obligations of the latter, or of their members, to the former, are in case of the death of a master workman. It was stated on the argument that in case of a death $2,000 of the insurance on the deceased is payable out of the beneficiary fund, and all over that amount out of the general fund, of the grand lodge; but we find nothing in the constitution to that effect. The constitution (article 6, § 2) provides that each subordinate lodge shall annually pay to the grand lodge such capitation tax on its members as may be fixed by the grand lodge. This, we understand, is for the benefit of the general fund. But the mere contingency that if a recovery was had in this action the capitation tax on the membership of the subordinate lodges might perhaps in the future be greater than it otherwise would be, would not, in our opinion, be such a direct and certain interest in the event of the action as would disqualify the members as witnesses under the statute. Article fourteen, (14,) section three, (3,) merely provides what sum every applicant for a beneficiary certificate shall pay at the time of his application. The constitution of the subordinate lodges, so far as appears from the record before us, makes no provision for the payment of any dues or assessments by the members, except the amount they are required to pay in at the time of their application for membership. The only provisions of the constitution of the grand lodge which seem to have any direct bearing upon the question under consideration are chapter fourteen, (14,) sections eight, (8,) nine, (9,) to the effect that, upon the death of a master workman, the grand recorder shall, if the fund in the grand receiver's hands is below the amount necessary to pay all claims upon it, notify each

subordinate lodge of all unreported deaths, stating the number of assessments required, which notice shall constitute as many assessments upon the entire master workman membership, *at the date of the death or deaths reported,* as are necessary to pay all claims audited, and the proper officers (of the subordinate lodges) shall at once forward one dollar for each member in good standing *at the time of the death for which the assessment is levied.* The following month they are in like manner to forward one dollar for each master workman in good standing *who was a master workman at the time of the death or deaths upon which the assessment or assessments were levied.* Upon notice of assessments as aforesaid, the financier of the subordinate lodge is to send a notice *"to each assessed member,"* and any member who fails to pay his assessment forfeits all rights under his certificate. It is not clear whether this means that the grand lodge makes an assessment on the subordinate lodge as such, and that the latter assesses its membership as a means of reimbursing itself, or that the grand lodge itself, through the agency of the subordinate lodge, assesses the membership of the latter. But, in either view, it would seem that the assessment is only to be made upon those who were members at the time of the death for which assessment is made. *This would not include St. Cyr, as he was not a member at the time of Perine's death.* If the assessment by the grand lodge is of the nature first suggested, viz., against the subordinate lodge, as such, of course the treasury of the latter might be depleted somewhat in case all the assessable members did not pay up. But this is a mere contingency. Moreover, it does not appear that, if any such thing should occur, it would certainly or at all increase St. Cyr's liability, if any, for future assessments by his subordinate lodge. For aught that appears, the amount of dues or assessments, if any, which he is liable to pay, is definitely fixed by the by-laws or constitution of the lodge, so that it could not in any contingency be increased or decreased. Had it appeared that a recovery in this action would directly and certainly subject St. Cyr to an assessment of any amount, either by the grand lodge or the subordinate lodge, he would undoubtedly have an interest in the event of the suit, within the meaning of the statute. But we think that no such interest was made to clearly appear. We may

not correctly understand the meaning of defendant's constitution; but, if so, we think the fault is not wholly ours.

Order reversed.

(Opinion published 50 N. W. Rep. 1022.)