# JUNE TERM, 1897.*

HOFFMAN *v.* PACK, WOODS & CO.

114    1
128    668

1. APPEAL—TITLE—OBJECTION NOT RAISED BELOW.

   Where an instrument, offered in evidence by plaintiff as a certified copy of a patent from the State, was received without objection, defendant cannot urge on appeal that it was not what was claimed for it.

2. SAME.

   It will be presumed in such case that the patent was regular, though verdict was directed for defendant, if neither the trial judge nor defendant's counsel pointed out any flaw therein at the trial.

3. SAME—PRESUMPTIONS—AUTHENTICATION OF INSTRUMENTS.

   Where the bill of exceptions does not purport to contain all of the testimony, it will not be presumed, for the purpose of sustaining the action of the trial court in directing a verdict for defendant, that there was error in the admission of a bill of sale offered by plaintiff in proof of his title, because such instrument was not authenticated by proof of its execution, and that it was thereafter disregarded by the court for that reason.

4. EVIDENCE—BOARD OF SUPERVISORS—RECORD OF PROCEEDINGS—CERTIFIED TRANSCRIPT.

   A copy of portions of the record of the proceedings of the board of supervisors, purporting to show the action of the board with reference to the equalization and apportionment of taxes, and certified by the county clerk to be a correct copy, and to contain all entries appearing upon the record in relation to that subject, is admissible in evidence to show the invalidity of the tax levy, and may be given the same force as a complete record, where no offer is made to supplement it.

5. SAME—EXAMINATION OF RECORD—WITNESSES.

   The county clerk may testify, from an examination of the record of the board of supervisors, that the signatures of the

---

* Continued from Vol. 113.

chairman and clerk are wanting, and that a certified transcript of a portion of the record comprises all that appears therein upon a particular subject.

6. APPEAL—TAX CASES—BRIEFS OF COUNSEL.
   Upon the appeal of a case involving the validity of tax deeds covering taxes for several years, the briefs of counsel should carefully collate the statutes and decisions applicable to each point raised, and contain references to the testimony, objections, rulings, and exceptions.

Error to Iosco; Simpson, J.   Submitted June 15, 1897. Decided July 13, 1897.

Replevin by Wesley L. Hoffman against Pack, Woods & Company and the Oscoda Boom Company.   From a judgment for defendants on verdict directed by the court, plaintiff brings error.   Reversed.

*Phillips & Jenks*, for appellant.

*O. E. M'Cutcheon* and *C. R. Henry* (*M. J. Connine* and *George L. Alexander*, of counsel), for appellees.

HOOKER, J.   The plaintiff brought replevin for a large quantity of logs which were cut and placed in the Au Sable river by one Rasmuson and sold to the defendants. It is not claimed that these logs, or the land from which they were cut, were ever in the possession of the plaintiff or his assignor; but he attempted to prove title to the logs by showing that they were wrongfully cut and removed from the land of his brother, John M. Hoffman, and assigned to him by said brother by a written bill of sale. To substantiate his claim, it was necessary to show title to the land in his assignor.   If he failed in showing this, it is clear that he was not entitled to a verdict.   The court directed a verdict upon the ground that the plaintiff had failed to show title to the land.   The evidence of plaintiff's title consisted of the following:

1. A certified copy of patent from the State of Michigan to William Sanborn of the premises, dated December 20, 1872.

2. Proceedings of the probate court, showing that Kate Sanborn Jenks was by said court declared to be the sole heir of William Sanborn, dated July 15, 1895.

3. A quitclaim deed dated October 22, 1880, from Kate Sanborn Jenks to Frank Hoffman.

4. A deed dated April 18, 1892, from Frank Hoffman to John M. Hoffman.

5. A bill of sale from John M. Hoffman to Wesley L. Hoffman, the plaintiff, reading as follows:

"PORT HURON, MICH., July 16, 1894.

"For a valuable consideration to me paid, the receipt whereof is hereby acknowledged, I hereby sell, assign, and transfer to Wesley L. Hoffman all logs, trees, and timber cut and removed from the south half of southwest quarter of section 36, town 27 north, of range 2 west, in the State of Michigan, and authorize him to recover the same by suit or otherwise. And I further assign and transfer to him all rights of action arising from the cutting and removing of said timber, and I further authorize the bringing of whatever suit or suits he shall deem necessary to enforce the rights hereby transferred, in his own name.

"JOHN M. HOFFMAN."

Counsel for the defendants say that the certified copy of a patent from the State proves nothing; that, if the patent issued, there is no provision of the law for the certification of a copy; and that under the case of *Bradley* v. *Silsbee*, 33 Mich. 328, a copy, though certified by the secretary of state, would prove nothing. What is meant by "a patent from the State" is not doubtful, and, when counsel permitted the reception of this copy without objection, they precluded themselves from afterwards denying that it was what was claimed for it, viz., a copy of the patent. It is urged that the court may have found such patent inadequate to convey title; but the bill of exceptions says this patent was of the land in question to William Sanborn, and, we think, justifies the presumption that it was regular, in view of the fact that neither counsel nor the trial court mentioned any flaw in it upon the trial. The point is without merit.

Counsel for defendants say that there is nothing to show that the bill of sale was authenticated by proof of its exe-

cution, and nothing in the record shows that it was. It is said to have been admitted over the defendants' objection, and that we may find that the court disregarded it. In other words, we may presume error in the admission of the instrument (which is not shown, for counsel for the defendants themselves say in their brief that all of the testimony is not in the bill) in order to avoid error in his decision of the case. We think this would be more ingenious than just, and that we should not conclude that the judge lulled the plaintiff into security by receiving this evidence, merely to disregard it, thereby denying him the opportunity of reviewing its admissibility and effect, as well as the benefit of it.

We think it unnecessary to discuss the necessity for proving the execution of the deed, especially where it is received without the statement of a ground for the objection made to its introduction; and we should not be inclined to presume that a man who held a patent for land from the State had no title, because the federal grant to the State was not proved, where counsel have barely raised, but not discussed nor cited authority upon, the question.

It is claimed that the plaintiff failed to make out his own title through Mrs. Jenks; but, as the evidence is not all here, we cannot say that there was not proof of the death of William Sanborn, and the identity of Mrs. Jenks as his heir; and, while the judge might have found that these were the weak spots in his claim, he did not, for his charge, directing a verdict, followed immediately his statement that he was "not satisfied that there is such a defect in the proceedings as to destroy these tax titles." It thus appears that he found that the defendants' tax titles cut off the alleged title of the plaintiff. If he was right in this, we need not consider the plaintiff's title. If wrong, the judgment must be reversed, unless we can say that the plaintiff failed to show a *prima facie* title, which manifestly we cannot, as all of the evidence is not before us. We may therefore eliminate all questions re-

garding the plaintiff's *prima facie* case, and assume that it was established, which leaves only the validity of the tax titles, and the questions arising on the introduction of evidence in relation to them.

The defendants sought to prove their title by introducing tax deeds covering the years from 1875 to 1889, inclusive. Upon rebuttal the plaintiff offered what purported to be transcripts of certain portions of the record of the proceedings of the board of supervisors and township boards,—among others, what purported to be a record of the reports of committees on equalization and apportionment, and the adoption of the reports, for the years 1879, 1880, 1884, 1885, and 1886. To this document was appended the certificate of the county clerk that this exhibit contained copies of all entries in the journal relating to such matters, and that the same were correct copies. He also testified that the record was not signed by the chairman or clerk. It does not appear to be denied that these documents show fatal defects, but they were excluded on the ground that they were not properly certified, in that it was not competent for the clerk to certify that a part of the records comprised all upon a particular subject (as that involves his judgment), and that the record was not, *i. e.*, did not purport to have appended the signatures of the clerk and chairman. The court's opinion seems to have been that the judgment of the clerk as to whether the transcript comprised all upon the subject, and whether the record was signed, was incompetent. The clerk was sworn, and testified to an examination of the record of which he was the custodian, and the accuracy of the copy certified. The court directed a verdict for the defendants upon the ground that the plaintiff had failed to show that the defendants' tax deeds, or some of them, were invalid. In response to a motion by the defendants' counsel to "direct a verdict upon the whole record for the defendants," the court said:

"I think the statute says that a certified copy shall be evidence of the proceedings. There are some proceedings

that you have to file all the papers to show jurisdiction. Now, I have been looking over this testimony, testifying to the record of the township clerks, and the only doubt arises in my mind whether a person can go to the county clerk or township clerk, and take his word for it that this is the record, and all of it, and come in and swear that it is all of it,—whether that is proper evidence.

"*Mr. Jenks:* In this case the witnesses have not taken the word of anybody. They swear from an inspection of the records.

"*The Court:* You say there are the records, and all of them; you say that all you know about that is what you were told by one who was not under oath; in other words, whether Mr. A. can go to the township clerk, and say that is the record, and all the record, and he can look it over, and come in and swear in this court that this is the record, and all of the record. The clerk will not be liable for anything that he said, and the man can say that he was mistaken, and he would not be guilty of perjury. I think the testimony you gave in regard to the township records should be stricken out. I shall strike it out. (Exception taken.) I shall strike out all the testimony given in regard to the records of the township clerks of the various townships of Crawford county in this case. (Exception taken.)"

Again, in discussing the certified copies, he said:

"Now, I have admitted these records, and they are in here for what they are worth. Of course, it is rather a blind way to ascertain how the records do stand. You rely upon the testimony of the clerk and the copies he has produced, and you rely upon the facts upon which the board acted in which certain matters were shown,—that they did not sign the record.

"*Mr. Jenks:* We make additional objections besides those.

"*The Court:* I haven't any proofs here but what they did sign the records at the board meeting some time. I don't know as that would make a bad record, where the chairman and clerk omitted to sign on certain days. I do not know as it would be necessary for them to sign every day, if at the end of the session they signed the journal. I am not satisfied that there is such a defect in the proceedings as to destroy these tax titles. If the whole records were here, we could have a better idea than we

now have.   I do not know that I ought to admit any of these records, but I have done it.   I never had any such proofs presented to me before.

"*Mr. Jenks:* I would prefer that your honor rule them out, and have the question presented squarely on that point.

"*The Court:* I think I shall hold that you have not shown title in the lands in question,—such a title as would entitle you to recover.   Now, then, on the other side, you waive the return of the property.

"*Mr. Alexander:* Yes; and we ask judgment for its value, $1,360.62, with interest from October 2, 1894, $1,447.86.

"*The Court* (addressing plaintiff's counsel): I do not think you have defeated the tax title."

Thereupon a verdict was directed for the defendants.

The court refused to consider the certified copies because they did not contain all of the record of the day or session of the board.   He declined to consider the testimony of witnesses as to contents of the record because they could not know the genuineness of the records.   We think that those parts of the record of the board of supervisors that were certified or proved by sworn copy were admissible. They certainly showed something about an attempted equalization and apportionment, and, if they included all that the board did in the matter, it would show some or all the tax levies invalid.   If these records seemed to show completed action by the board, the court would have been justified in treating it as a complete record and acting upon it, especially as no effort was made to supplement it.   Again, the clerk testified that there was nothing further to be found on the subject; and this, instead of being contradicted by other experts, is met by the technical objection that the full record is necessary to prove the negative, because it involves the judgment of the clerk.   We cannot believe that it is necessary to produce the records of the board for the entire session, including everything from each roll-call to the lists of claims pre_ sented and allowed, to show that the board attempted to equalize the rolls, or that the officers failed to sign the

record. It is no uncommon thing to call witnesses to prove the aggregate of certain items in books, or to relieve the court from tedious examinations to ascertain whether items are entered therein by showing by one who has examined that they are not. This court held in *Maxwell* v. *Paine*, 53 Mich. 30, that it was competent to thus prove that the proceedings of a common council failed to show certain action, just as in this case the clerk testified that the signatures were wanting, and that nothing in relation to equalization, beyond what was in the transcript, was to be found in the records. We think the court erred in striking out this proof, or, what was equivalent, disregarding it.

The condition of the record and briefs forbids a more extended examination of the other questions in this case. Innumerable points are raised, and very few references to the record or to authorities are made. There is a vast amount of detail in examining the validity of tax deeds covering taxes for a dozen years, and briefs should carefully collate the statutes and decisions applicable to each point raised, and contain references to the testimony, objections, rulings, and exceptions.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.