WAGNER *v.* SUPREME LODGE KNIGHTS AND LADIES OF HONOR. [1]

1. BENEFIT ASSOCIATIONS—BY-LAWS—WAIVER.

A provision of the by-laws of a benefit association, making the initiation of the applicant a condition precedent to the issue of a membership certificate, is waived by the issue of the certificate without having required a performance of such condition.

2. SAME—ISSUE OF CERTIFICATE—QUESTION FOR JURY.

Plaintiff's wife applied for membership in a benefit association, and her medical examination was approved, and the necessary dues paid. The local lodge's presiding officer testified to having received a certificate issued by the supreme lodge, and two other witnesses swore that they had seen it. Such certificate was not produced, and the declaration averred its loss. The wife's name did not appear as a member on the supreme lodge's records, and its books showed no record of any fees or assessments received from her to constitute her such member. *Held*, a question for the jury whether the certificate was issued.

3. SAME — ASSESSMENTS — NEGLECT OF SUBORDINATE LODGE — AGENCY.

Where, under the by-laws of a benefit association, the local lodge is authorized to receive assessments, the neglect of such lodge to forward the same to the association will not defeat the rights of a member, notwithstanding a by-law declaring such lodge to be the agent of the member, and not of the association.

4. SAME—TENDER—WAIVER.

Where a benefit association has refused to receive an assessment on the ground that the person tendering it was not a member, it cannot defeat a claim for benefits because of a failure to tender a subsequent assessment.

5. SAME—EVIDENCE—CONCLUSIONS OF WITNESS.

An employé in the office of the secretary of a benefit association cannot give his opinion, gathered from his duties and from his contact with the records, as to whether a certain person was a member of the association.

[1] Rehearing denied December 21, 1901.

6. SAME—WANT OF APPLICATION.

A benefit association cannot escape liability under a certificate on the ground that it was issued without a formal application therefor.

7. SAME—DELIVERY OF CERTIFICATE.

Where a certificate is issued by a benefit association, and sent to a subordinate lodge for a member, the contract is complete, though the certificate is not actually delivered.

8. SAME—INSTRUCTIONS TO JURY—HARMLESS ERROR.

In an action against a benefit association for a benefit, an instruction that, if deceased paid all her dues and fulfilled the other requirements, perhaps, though a certificate was not issued, she would have been a member, is not misleading, where the jury were further explicitly instructed that they must find that the certificate was issued in order to find for plaintiff.

Error to Wayne; Waite, J. Submitted October 23, 1901. Decided November 12, 1901.

*Assumpsit* by William Wagner against the Supreme Lodge Knights and Ladies of Honor on a benefit certificate. From a judgment for plaintiff, defendant brings error. Affirmed.

The defendant is a mutual benefit association, having a system of lodges. Its principal office is at Indianapolis, Ind. Its members are of two classes,—social and beneficiary. One Barbara Bishop received a commission, as deputy supreme protector of the Knights and Ladies of Honor, to organize lodges in Michigan. In July, 1897, she organized a lodge in Detroit known as the "Bishop Lodge." Plaintiff was both a social and beneficiary member, and signed the original petition. His wife also became a social member. Whether she became a beneficiary member is the chief subject of controversy. July 6th she applied for examination by the medical examiner, was then examined, and her examination approved by him on July 26th, in the following language, indorsed on the back of the application: "Application of Mary Wag-

ner to Bishop Lodge, No. 2,026, State of Michigan. Approved July 26, '97." These documents were introduced in evidence. In this application the following question and answer appear:

"Do you know that in your application for relief fund membership you warrant the correctness and truth of your answers to all questions propounded you by the medical examiner in this blank, and that if your answers to such questions are not correct or true, or if you have concealed facts or made misstatements relating to your past or present condition or occupation, that your relief fund certificate, if issued, would be null and void? Yes."

On July 15th she paid Mrs. Bishop $1 for charter fee, and an assessment of 60 cents. These were the fees required of a beneficiary applicant. An assessment of 60 cents was due the 1st of September. Plaintiff tendered the amount to the financial secretary of the local lodge,— the proper officer to receive it,—but he declined to receive it on account of Mrs. Wagner's sickness, and because he had heard from some of the members of the lodge that she never was a member, having never been initiated and never entered the lodge room. He took the 60 cents under protest, and forwarded it to the supreme lodge, which declined to accept it, asserting that she was not a member. Another assessment became due the 1st of October. Mr. Wagner testified that he offered to pay it, but the officer declined to receive it. Mrs. Wagner died November 24, 1897. Defendant declined to recognize that she had ever been a beneficiary member, and refused payment. Thereupon this suit was instituted, resulting in a verdict and judgment for plaintiff.

*Hall & Brockway*, for appellant.

*Bacon & Yerkes* and *Jonathan Palmer, Jr.*, for appellee.

GRANT, J. (*after stating the facts*). 1. Mrs. Wagner was not initiated. The provisions of the laws of the association in regard to initiation are as follows:

. "Each applicant must undergo a medical examination made by a commissioned medical examiner, when, after said examination has been approved by the supreme medical examiner, and the applicant has paid the requisite initial assessment and certificate fee, and has been initiated into the lodge, then such person shall be entitled to any benefits that may be due in the event of death under the terms of the relief fund certificate. * * * The subordinate lodge shall, upon receiving notice of approval from the supreme medical examiner, and after the initiation of the applicant, forward the application to the supreme secretary, with the prescribed fee for the relief fund certificate. * * *

"SEC. 4. The liability of the order to pay benefits, and the liability of the members to pay assessments, shall take effect at the time of the approval of the supreme medical examiner: *Provided*, that the liability of the order to pay benefits, and of applicants for membership to pay assessments, shall date even with the initiation of the applicant: *And provided*, also, that no liability shall exist on the part of the order to pay benefits until the initial assessment and certificate fee are paid."

The charter contains no such provision. If, as defendant's counsel insist, the initiation was by these by-laws made a condition precedent to the issue of the certificate, yet this condition might be waived. When, in the absence of fraud, a policy of insurance is issued in violation of such provisions of the by-laws, those provisions are waived, and the policy is valid. This appears to be the well-settled rule. *Davidson* v. *Benefit Society*, 39 Minn. 303 (39 N. W. 803, 1 L. R. A. 482); *Morrison* v. *Insurance Co.*, 59 Wis. 162 (18 N. W. 13); *Fitzgerald* v. *Life Ass'n*, 3 N. Y. Supp. 214; *Union Mut. Fire Ins. Co.* v. *Keyser*, 32 N. H. 313 (64 Am. Dec. 375); *Perine* v. *Grand Lodge A. O. U. W.*, 48 Minn. 82 (50 N. W. 1022); Nibl. Acc. Ins. & Ben. Soc. § 147. The issue of a certificate is evidence that prior conditions have been complied with, or, if not complied with, that they have been waived; and, in the absence of fraud, it is proof of the member's good standing. *High Court I. O. F.* v. *Zak*, 136 Ill. 185 (26 N. E. 593, 29 Am. St. Rep. 318); *Tits-*

*worth* v. *Titsworth*, 40 Kan. 571 (20 Pac. 213); *Mulroy* v. *Supreme Lodge K. of H.*, 28 Mo. App. 463; *Supreme Lodge K. of H.* v. *Johnson*, 78 Ind. 110; *Kumle* v. *Grand Lodge A. O. U. W.*, 110 Cal. 204 (42 Pac. 634).

2. The main defense is one of fact, viz., that no certificate was ever issued. Defendant's counsel insist that, under the evidence, the court should have directed a verdict for it. In order to sustain this contention, it must be found that there was no substantial evidence that a certificate was issued. The undisputed facts are that Mrs. Wagner signed the original petition for a charter for the Bishop Lodge; that she made application for medical examination; that in that application reference was made to her application for relief fund membership; that she paid to the proper officer of defendant the dues necessary to become a beneficiary member; that she was examined and approved by the medical examiner; and that she tendered the first assessment that was made after the date of her alleged certificate, and that this was received under protest. The declaration alleges that the certificate was lost. In addition to the above conceded facts, plaintiff testified that his wife made application as a relief fund member at the same time that he did. One Hess, the protector or presiding officer of Bishop Lodge, testified:

"I know that I signed a beneficiary certificate received from the grand lodge, issued to Mary Wagner. When I received the certificate I signed it, and gave it, with the other certificates, to our recording secretary's wife, Mrs. Herrick. It was at her residence that I signed them."

The force of this testimony was weakened by the cross-examination, but not to the extent of wholly destroying its value. On redirect examination he testified:

"I can't say whether Mary Wagner's name appeared as the insured in that certificate, but her name was there, and she was insured."

This witness was the first presiding officer of the local lodge, had been re-elected, and was such officer at the time

of the trial.    The weight to be given his testimony belonged
to the jury, who heard him testify.    There is nothing in
the record to indicate any desire or intention on his part to
be untruthful.

Mr. Herrick, the recording secretary, testified that there
was a certificate issued to Mary Wagner; that it came in
the first batch of certificates received from the grand lodge;
that he left it in a drawer in his possession, in the lodge
room; that it disappeared from there; that he did not
know what became of it; that it was issued to Mary
Wagner.    Witness was then shown William Wagner's
certificate, and he said that it was the same in form as the
one issued to Mary Wagner.    On cross-examination he
testified:

"There was no name in the body of her certificate other
than her own and her husband's.    I can't answer posi-
tively which one came first, but I can tell which appeared
first on the outside.    The names were placed on the out-
side by my wife.    Mary Wagner's certificate was for
$1,000, and William Wagner's certificate was for $1,000.
William Wagner's certificate was delivered to him all
right.    It came at the same time that Mary Wagner's did,
and I signed it at the same time."

On recross he said:

"I wish to say that I am very sure that I saw 'Mary
Wagner' on the outside; but on the inside, I will not
state positively whether it was as member or beneficiary
on the inside."

Mr. Hess was recalled, was shown William Wagner's
certificate, and testified:

"Mary Wagner's name appeared in her certificate in
precisely the same place where William Wagner's name
appears, and reads just as her certificate read, with her
name in it:

"'This certificate, issued by the Supreme Lodge of Knights and
Ladies of Honor, witnesseth, that Mary Wagner, a member of
Bishop Lodge, No. 2,026, of said order, located at Detroit, in the
State of Michigan, is entitled to all the rights and privileges of
membership in this order of Knights and Ladies of Honor, and to
participate in the relief fund of the order to an amount of $1,000.'

"Any name might be placed in there, and I could read the certificate in the same way. I can swear that her name appeared there."

Emma Kramer, another charter member, testified that she looked over these certificates at Mrs. Herrick's house after the lodge had been instituted; that she saw Mr. Wagner's and Mrs. Wagner's certificates,—read them through; and that William Wagner was the beneficiary in Mrs. Wagner's certificate. On cross-examination she testified: "Mary Wagner's certificate came back with the first batch, I am almost positive."

The evidence on the part of the defendant showed that the name of Mrs. Wagner did not appear as a beneficiary member upon the records of the grand lodge, and that there was upon their books no record of any fees or assessments received from her to constitute her such a member. The evidence is very strong, but is not of that character that justifies a court in saying that it is unimpeachable. We cannot say that it was impossible for the officers of the grand lodge to make a mistake. It is not the province of a court to say that the testimony of these three witnesses that they saw the certificate is false. If their testimony be true, a certificate was issued. In addition to this is the evidence of her application and the certificate of the medical examiner, showing that she had taken steps to become a beneficiary member. We think there was a clear conflict of evidence, and that this question was properly left to the jury.

3. One of the defendant's laws provides:

"In receiving money from members in payment of relief fund assessments, and in all acts performed in complying with the relief fund laws of the order, the subordinate lodge and its officers are the agents of the members, and not the agents of the supreme lodge."

It is now urged that plaintiff cannot recover, because Mrs. Wagner's agent, the local lodge, neglected to remit her dues to the grand lodge. This is, in effect, saying to the members of the defendant: "The local lodge is

authorized to receive the dues from members, to be remitted to us [the supreme lodge], but you pay it there at your risk. If our agent, who is authorized to receive this money, fails to pay it to us, it is your loss, and not ours." A merchant might as well say to his debtors: "Mr. A., my collector, is authorized to receive the money you owe me, but you must see that he gets the money to me, or you will not be relieved from liability." This question was before the Supreme Court of the United States in *Knights of Pythias* v. *Withers*, 177 U. S. 260 (20 Sup. Ct. 611), and the court said:

"To invest him [the secretary] with the duties of an agent, and to deny his agency, is a mere juggling with words. Defendant cannot thus play fast and loose with its own subordinates. Upon its theory the policy holders had absolutely no protection. They were bound to make their monthly payments to the secretary of the section, who was bound to remit them to the board of control; but they could not compel him to remit, and were thus completely at his mercy. If he chose to play into the hands of the company, it was possible for him, by delaying his remittance until after the end of the month, to cause a suspension of every certificate within his jurisdiction."

4. It is also urged that plaintiff did not make legal tender of the October assessment. The testimony of plaintiff is that he offered to pay it for his wife, but that the financial secretary refused to receive it. He had already made legal tender of the previous assessment, due in September, which was refused; the defendant then denying the membership of Mrs. Wagner. The law does not require useless things to be done. It was useless to tender a second assessment when a previous one had been refused upon the ground that Mrs. Wagner was not a member.

5. Complaint is made of the exclusion of the following question on behalf of the defendant to the clerk in the office of the supreme secretary:

"Mr. Hutton, so far as your duties are concerned, and so far as you have come in contact with the records in any office of this association, what have you to say as to

whether Mary Wagner was ever a member of defendant organization?"

Counsel insist that it is permissible to show, by a witness who has examined a record, the absence of entries thereon; citing *Maxwell* v. *Paine*, 53 Mich. 30 (18 N. W. 546); *Hoffman* v. *Pack, Woods & Co.*, 114 Mich. 1 (71 N. W. 1095). The above question is not within those authorities. The question did not ask whether he had examined the records, and whether her name appeared there. It asked for witness' opinion, to be gathered from his duties and from his contact with the records, whether she was ever a member.

6. It is also urged that while there was the testimony of three witnesses that the second application, in addition to the one for the medical examination, was made, there was no proof that it was ever forwarded by the local lodge to the defendant. The very fact that the grand lodge issued a certificate is some evidence to show that there was an application upon which to base it. But, if defendant chose to issue the certificate without an application, it is now estopped to assert this as a defense.

7. If a certificate was issued by the grand lodge and sent to the local lodge for Mrs. Wagner, the contract was complete, although the certificate was not actually delivered to her. Delivery to the local lodge for her was equivalent to delivery to her. *Lorscher* v. *Supreme Lodge K. of H.*, 72 Mich. 316, 328 (40 N. W. 545, 2 L. R. A. 206).

8. Complaint is made that the court charged the jury:

"If Mrs. Wagner paid her dues and fulfilled the other requirements, she would have been a member of the order, even though the certificate was not issued."

The charge is not susceptible of this construction. In discussing the question of the fact of the certificate, the court said:

"If she had paid her dues and fulfilled the other requirements, perhaps, even though the certificate was not issued, she would have been a member."

Taking the entire charge together, it is evident that the jury could not have been misled by this statement. After this, and near the close of the charge, the court again instructed the jury that they must find that this certificate was issued by the supreme lodge, in order to find a verdict for the plaintiff.

The judgment is affirmed.

The other Justices concurred.