ALPHONSE A. BOST v. SUPREME COUNCIL ROYAL ARCANUM.[1]

November 21, 1902.

Nos. 13,151—(125).

Fraternal Insurance.

Where a fraternal insurance association depends upon assessments of members to provide for death losses according to the terms of by-laws, such by-laws are to be construed as a contract of insurance between the association and the insured member, and a suspension of benefits under conditions provided for therein defeats a recovery by the beneficiary upon the death of such member, unless compliance therewith had been waived.

[1] Reported in 92 N. W. 337.

87 M.—27

### Business Method of Defendant.

Where the beneficiary relies upon a habit of the association to allow its members to become delinquent, such course of conduct is not irrevocable, but may be changed by the association to insure a more strict compliance with the by-laws thereafter, so that its members cannot subsequently claim the benefit of the previous delinquent course to justify further neglect in that respect.

### Payment of Dues during Sickness.

In a by-law of such association that a sick member may have his dues and assessments paid during the continuance of his disability, providing it has not originated from intemperance, vicious or immoral conduct, upon written notice being given, the giving of the written notice is mandatory.

### Failure to Give Notice.

Facts in this case considered, and *held*, that the neglect of a member of the Royal Arcanum Fraternal Association to comply with the by-laws and pay his assessments, or to give written notice of sickness and disability, deprives the beneficiary of any rights in the relief fund provided for by such association upon his death.

Action in the district court for Hennepin county to recover from defendant, a fraternal insurance association, $3,000 upon a certificate of membership issued to Theodore Bost, Jr., payable to plaintiff as beneficiary. The case was tried before McGee, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Geo. D. Emery,* for appellant.

*Philip Gilbert,* for respondent.

LOVELY, J.

Defendant is the Supreme Council of the Royal Arcanum, a fraternal insurance association incorporated under the laws of Massachusetts. Theodore Bost, Jr., whom we shall hereafter designate as "the insured," obtained a certificate from defendant upon his life for the benefit of his brother, the plaintiff here, for $3,000. The insured died February 2, 1899, and the beneficiary brings this suit to recover the amount named in the certificate. The cause was tried to the court and a jury. At the close of the evidence a verdict was directed for defendant, a new trial was denied, and plaintiff appeals.

The defendant has general supervision of all branches of the association, embracing a state council made up from delegates of subordinate councils, who have primary authority to admit applicants to membership subject to regulations imposed by the supreme council. Each subordinate council has charge of collecting assessments from its members, which is done through one of its officers, called a "collector." It then remits the assessments to the supreme council, with whom it keeps an account, whereby the relations, financially, of its members to defendant should appear. The resources to provide benefits for the relatives of deceased members, which is a principal object of the association, are derived solely through the assessments thus imposed, constituting what is termed the "widows' and orphans' fund." Each person desiring to join the order must be admitted to a subordinate council, whereupon defendant then issues what is called a "benefit certificate," wherein it agrees to pay the beneficiary, out of the "widows' and orphans' fund," a specified sum, not exceeding $3,000 in any case. The person receiving such certificate must comply with the laws, rules, and regulations governing the order, or which may thereafter be enacted by the supreme council; and payment to the beneficiary of the amount named in the certificate is expressly conditioned upon his good standing at the time of his death. The member is not only required to pay the assessment named, but dues for the maintenance of the subordinate council to which he belongs.

According to the by-laws of the association in force until July 1, 1898, assessments were required to be paid within thirty days after notice, and, if not paid, such failure suspended the member after the period of thirty days, when he would lose all benefits of membership without further action. About the date last named a new by-law was adopted to the effect that assessments were thereafter to be made regularly at stated periods, of which members were to take knowledge without specific notification. These conditions were subject to a further by-law allowing each subordinate council to pay one assessment for a member in case he failed to do so in time. The only provision for further forbearance is to be found in a by-law, No. 377, which reads as follows:

"A member in good standing, who is not in arrears for dues or fines, and has received the degree six months previously, who may become totally disabled, by sickness or other disability, from following his usual or some other occupation, if such sickness or disability continues for more than one week, shall have his dues and assessments paid by his subordinate council from and after the receipt by the council, its secretary, collector, or regent, of written notice from the member, or some one in his behalf, of his sickness or disability; the payment of his dues and assessments to begin with the dues and assessments maturing and becoming due on and after the date of the receipt of such written notice and the expiration of such one week, and continue so long as such total disability continues; provided, that such sickness or disability has not originated from intemperance, vicious or immoral conduct."

These two by-laws contain the only privileges granted to members beyond the otherwise strict exactions above noted, and it may be observed in passing that the supreme council had no means of knowing the relation of the members to the association, other than the information derived from the report of the subordinate council, each one of whom is interested to a certain extent in the conduct of its particular affairs, as well as of the members of all other branches of the order. It should also be stated that the by-laws provide for appeals to be taken from the authoritative acts of an officer or of his subordinate council to the "regent," afterwards to the state council, and ultimately to the supreme council.

In March, 1896, the insured became a member of a subordinate branch of the association known as "Ramsey Council, No. 1,250," located at St. Paul, and received from defendant a certificate with the usual conditions, authorizing plaintiff, who was therein named as the beneficiary, to receive on the death of insured, if in good standing, the sum of $3,000. After the insured became a member, his assessments were kept up with punctuality until in the month of February, 1898, when he allowed one to become delinquent. It was paid before the next becoming due in March following, when he paid both. These payments were accepted by the subordinate council. In May, 1898, an assessment (No. 259) became due, and was unpaid. Three assessments following became due, but were unpaid. They were advanced to defendant by the subordinate

council out of its own funds, but were never repaid by the insured, nor did he ever offer to pay them, nor were any subsequent assessments paid by him. The evidence also shows that the collector of this council often paid for other members more than the single delinquent assessment authorized in the by-laws, and that, after members other than the insured would be in arrears, three or four assessments would be advanced for them, by such collector, with the knowledge and approval of the subordinate council; but it does not appear that such custom was known to the supreme council, or to any of its officers.

Conceding that the supreme council would be bound by the conduct of the subordinate council,—which it is not necessary to decide at this time,—it should be held, following the rule laid down in Mueller v. Grand Grove, U. A. O. D., 69 Minn. 236, 72 N. W. 48, that the habit of the primary branch of the order to allow its members to become delinquent from time to time to the extent of three or four instances was so general as to have justified the insured in supposing that a strict compliance to that extent, at least, had been waived for his benefit; and we shall, for the purpose of this review, assume that, when the three assessments in arrears were paid by the Ramsey Council, the suspension of the insured from the benefits of the order could not have been enforced. It was at this time that the change in the system of making assessments was adopted by defendant, whereby the members were to pay at stated periods, of which the insured was duly notified. It further appeared that early in May, 1898,—about the time insured began to fall in arrears,—he became sick. His illness increased. He was unable to work, left his employment, and continued to grow worse until his death occurred, eight months afterwards. During this time he was probably in a condition to take the benefit of the provision of the by-laws relating to sick and disabled members had he or some one in his behalf applied therefor upon written notice to the subordinate council. But no such application was made, and it was sought to supply this failure by showing that such sickness was apparent and known to friends of the insured and members of the council, although it does not appear that this body had

the matter brought to its attention at any meeting, or that the fact was known to a majority thereof or to defendant.

It also appeared that, after the insured became delinquent for the assessments which were paid as above stated by the subordinate council, a committee, composed of three members, was appointed at a regular meeting to secure repayment of sums advanced by it for delinquent members, and to require a more prompt compliance thereafter with the by-laws in respect to assessments and dues. A member of this committee (H. C. Gilbert) was also engaged to assist the collector of the council in his duties, and as a member of the committee and assistant of the collector he called upon the insured, and in substance told him that the assessments already advanced by the subordinate council must be repaid; that an assessment then made (No. 263) was due, and, if not paid, he would be suspended; that the subordinate council would not protect him further. Over plaintiff's objection at the trial, Gilbert was allowed to state that the insured told him that he intended to drop his membership. When the insured became delinquent on assessment No. 263 he was, according to the terms of the by-laws, suspended from the order, but took no appeal from such suspension, nor made any complaint.

It is insisted for plaintiff that, after such suspension, insured had imposed upon him no further liability to pay assessments,— though many were made during the remaining period of his life,— for the reason that it would be useless for him to do so. Were he improperly suspended, as instanced in the case of Supreme v. Davis, 26 Colo. 252, 58 Pac. 595, upon which plaintiff relies, there might be considerable force in this claim; but insured was suspended for nonpayment of a valid assessment, which it was his duty to pay. His delinquency was through his own default, which he did not contest by appeal or otherwise; and, unless he was relieved on account of his sickness and disability, it was his duty to put himself right with the order, or at least to make an effort to do so, before claiming a continuance of the benefits belonging to members in good standing.

It cannot be claimed that the habit of the subordinate council to allow delinquencies to occur should continue without change to

prevent an enforcement of the by-laws for all time, when due notice to a member interested that such negligent custom would cease had been given. The relation of the subordinate council and its collector to the supreme council was such that it became the duty of the collecting body to enforce defendant's regulations; although it had neglected this duty in the past in a way that might have established a negligent system to mislead members, it could not have had this effect after proper information conveyed to the insured that the custom would not continue. It also seems very clear that the course adopted by the subordinate council to discontinue the negligent habit in this respect was reasonable, and a proper line of policy to rectify past errors, and tending to correct any misapprehension occasioned thereby. The member of the committe who notified the insured was acting within his scope of duty and delegated authority in this respect, and his conversation with the insured, during which the latter told him that he intended to drop his insurance, tended to show that insured was not relying upon any past course of conduct by the collector or the subordinate council to relieve him from arrears, and it likewise tended to explain his neglect thereafter to pay any attention to subsequent assessments, or to make written claim under by-law No. 377, providing for sick and disabled members; we therefore hold that his testimony was material.

But it is urged still further that the fact of the sickness of insured, and his consequent disability to earn the means to pay assessments, relieved him from doing so even though he gave no written notice of his sickness. A reference to by-law No. 377 shows that its benefits can only be obtained by a member not in arrears, who is totally disabled by sickness, etc., from following his usual or some other occupation, when, after a certain period, he shall have his dues and assessments paid by his subordinate council. This right is to commence, however, and be continued upon the receipt by the council, its secretary or collector, of a written notice from the member, or some one in his behalf, of his sickness or disability. And this is also upon the condition that such disability had not originated from intemperance or vicious or immoral conduct. These provisions are personal to, and for the

direct benefit of, insured. They are also a burden upon the subordinate council to continue only until the disability ends; hence it is an undoubted right of such council to have all reasonable protection implied by such by-law. That specific notice to the council or to the collector of the disability is a substantial and necessary requirement cannot, therefore, be doubted, for it furnishes an opportunity for an investigation by the association of the existence and causes of the disability. It is also essential that the notice should be in writing, to enable the officers of the subordinate council to justly deal with other members, and to keep an accurate account of its relations with them, which could not be done if it were left open to a disabled party to assert his disability after it terminated. To provide for this necessity, a written, rather than oral, notice was obviously required, and we have easily reached the conclusion that the provision therefor in the by-laws is of material consequence and importance to the association, and more than directory—it was mandatory.

The testimony of the witness Gilbert to the conversation between the insured and himself was objected to at the trial upon the ground that, being a member of the association, he was interested in the event of the action, and could not give evidence concerning the conversation between himself and the insured, under G. S. 1894, § 5660. The interest in the event of litigation which excludes a witness from testifying to the conversation of a deceased person must be pecuniary, certain, and immediate, and not contingent, remote, or merely possible. Marvin v. Dutcher, 26 Minn. 391, 4 N. W. 685. If Gilbert was interested, it was because he would be affected by the event of the cause itself. Perine v. Grand Lodge A. O. U. W., 48 Minn. 82, 50 N. W. 1022. This interest depended upon the contingency of a recovery, which could only affect the witness indirectly by the depletion of the funds of the association, and a possible assessment to make good such deficiency. While this might be treated as a possible pecuniary interest, it was too remote to deprive the association of the benefit of the information acquired by him, while acting as its agent, in conveying knowledge of its acts to the insured, and directly in-

volving the relation of the insured to the order.  Perine v. Grand Lodge A. O. U. W., supra.

We have carefully examined other assignments of error, where evidence offered was excluded and where other evidence was received over objection.  We do not think that the rejection of the offered evidence nor the evidence received should change the fact of the voluntary default of the insured in keeping up his assessments, and it is not, therefore, important specifically to consider such assignments.

Order affirmed.