Syllabus.

THE HIGH COURT OF THE INDEPENDENT ORDER OF FORESTERS

*v.*

ANNA ZAK.

*Filed at Ottawa January 22, 1891.*

1. BENEFIT SOCIETY—*"good standing" of members—how shown—evidence in respect thereto—presumption.* A mutual benefit society issued a certificate of membership, by which it agreed to pay $1000 to the wife of the member on his death, upon his compliance with the rules of the order, provided "such member is in good standing" in the order at his death. Payment of the certificate was resisted, on the ground that the member was not in good standing at his death. The constitution of the society provided for the trial and reprimand or expulsion of offending members. It was *held*, parol evidence of witnesses could not be received, in a suit upon the certificate, to show the bad standing of the member at his death, or his failure to comply with the rules of the order.

2. In such case, the loss of a member's good standing in the order must be shown by the minutes, proceedings or records of the order itself, and not by the statements of officers or members,—in other words, it must be shown by some official action on the part of the organization. The order being a corporate body, its attitude toward a member can be known only through its action as such corporation.

3. The issuing of a certificate of membership by a mutual benefit society is evidence of the holder's good standing in the order when it issued, and such good standing will be presumed to continue, unless there is legitimate proof that it no longer exists. The burden of proving the loss of good standing rests upon the society.

4. In a suit upon a certificate of membership to recover the sum agreed to be paid to the beneficiary, when its payment is conditioned on the good standing of the member at his death, it is competent to adduce any legitimate proof that the deceased had failed to pay his lawful dues before his death. Such failure, if without valid excuse on his part and without fault on the part of the order, will be competent evidence of the loss of good standing.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

Mr. C. Stuart Beattie, for the appellant.

Messrs. Jones & Lusk, for the appellee.

Mr. Justice Magruder delivered the opinion of the Court:

This is an action of assumpsit brought in the Superior Court of Cook County by the appellee against the appellant. Trial was had before the court and a jury, resulting in a verdict for the plaintiff, and, after the overruling of a motion for new trial, in judgment upon the verdict. The Appellate Court has affirmed the judgment, and the case is brought before us by appeal.

The action is brought upon a certificate of endowment, dated December 28, 1883, executed by the appellant and issued to one Jan Zak, the deceased husband of appellee, who signed a written acceptance of the certificate, endorsed thereon. The material portion of the certificate is as follows:

"This certificate is issued to Jan Zak, a member of Court Ceska-Lev No. 24, I. O. F. of Illinois, upon condition that the statements made by him in his application for membership in said court, and the statements certified by him to the medical examiner, be and they are hereby made a part of this contract, and upon condition that the said member complies in the future with the laws, rules and regulations now governing the said order, or that may hereafter be enacted by the High Court. These conditions being complied with, the said High Court of the I. O. F. of Illinois hereby promises and binds itself to pay to Mrs. Anna Zak, his wife, in case of his death, as directed by his will, $1000, upon satisfactory evidence of the death of said member and upon the surrender of this certificate: *Provided*, that said member is in good standing in this order at the time of his death: *And provided, also*, that this certificate shall not have been surrendered by said member, and another certificate issued at his request, in accordance with the laws of this order."

The previous application of Jan Zak for membership in Court Ceska-Lev contained, among other things, the following agreement: "I agree to make punctual payment of·all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules and usages of the Order now in force, or which may hereafter be adopted by the same."

Jan Zak died intestate on April 23, 1887. Proceedings were taken for his expulsion during his lifetime, but it is conceded that the attempted expulsion was absolutely void for want of proper notice. The charges made against him, upon which the proceedings in question were based, were: 1. that he appropriated to his own use certain monies put into his hands by a brother member to be used for the purpose of paying the dues of the latter; 2. that he had sustained improper relations with another man's wife.

Upon the trial the defendant, for the purpose of showing that the deceased was not "in good standing" in the order at the time of his death, offered to prove by the oral evidence of certain witnesses, that the foregoing charges were, in fact, true, and also that the deceased had failed to pay his lawful dues to the "Court," during the last year of his life. The trial judge refused to admit the proof, and the defendant excepted. The rejection of this evidence is assigned as error. We are of the opinion that it was properly rejected.

The subject presented for our consideration is the meaning of the expression, "*in good standing.*" The promise to pay, as set out in the certificate, is subject to the proviso that "said member is *in good standing* in this order at the time of his death." In *Royal Templars of Temperance* v. *Curd*, 111 Ill. 284, we held that the application and the certificate constituted the two parts of a contract, the first being obligatory upon the beneficiary, and the second upon the Order. It was also there held, that the words "good standing" were to be construed with reference to the language of the application and the language of the certificate. Adopting this method of

ascertaining the meaning of the words, it may be said, for the purposes of the present case, that a member is "in good standing" when he complies with the laws, rules, usages and regulations of the Order.   Inasmuch as the rules of the appellant prescribe the mode of paying dues and assessments, and the penalties for their non-payment, compliance with the laws, rules, usages and regulations of the order necessarily includes punctual payment of all dues and assessments for which a member may become liable.

The issuance of the certificate to a member is evidence of his good standing when it is issued, and such good standing will be presumed to continue, unless there is proof that it no longer exists.   In view of this presumption, the burden of proving the loss of good standing rests upon the society. (Bacon on Ben. Soc. & Life Ins. sec. 414).   It was, therefore, proper for the Order to show by legitimate proof that the deceased had failed to pay his lawful dues during the last year of his life.   Such failure, if without valid excuse on his part and without fault on the part of the Order, would have been competent evidence of the loss of good standing.

In the case at bar, however, something more is involved in the meaning of "good standing" than the non-payment of dues at the times and in the mode specified in the rules.   It was held in the *Curd* case, that "good standing" meant "good *conduct*," that is, freedom from the violation of those requirements, which indicate the benevolent purposes of the society, or express its intention to insist upon a high standard of character among its members.   Section 1 of Article 13 of the constitution of appellant specifies and defines what is "conduct unbecoming a Forester."   If, therefore, a member has been guilty of unbecoming conduct as thus defined in the constitution, proper and legitimate evidence of such conduct would be competent as bearing upon the question of his standing in the order.   Section 1 of Article 13 contains the following clause: "Any member of this Court, who shall violate any of the laws,

rules or regulations of the Order, the constitution, by laws, or rules of this Court, or any lawful order made in relation to any of the aforesaid laws, rules or regulations, or who shall commit any act tending to injure the good name of the order, impair its efficiency, or bring it into disrepute, shall be deemed to be guilty of *conduct unbecoming a Forester.*" In view of the language of this clause, it cannot be said that a member would be in good standing in the order, if he had committed an act, which tended to injure its good name, or impair its efficiency, or bring it into disrepute. We are not prepared to say, that such an act was not committed by the deceased, if he had been guilty of either of the charges upon which an attempt was made to expel him.

But the defendant below did not show, or offer to show, the loss of good standing by the right kind of proof. Immediately following the clause above quoted from section 1 of article 13 is this clause: "and upon *due trial and conviction thereof,* shall be reprimanded, suspended, dropped or expelled, as the Court or other lawful authority may determine." Whether the offense be a violation of the rules, or an indulgence in conduct unbecoming a member of the order, there must be a trial and conviction, before even a reprimand can be inflicted. It was, therefore, necessary to show the loss of good standing by the minutes, proceedings or records of the Order itself, and not by the oral statements of officers or members. If these societies were allowed to prove, after a member's death, that he had committed certain unworthy acts, and that those acts were known to the other members, and that thereby his good standing had been ended, the temptation to avoid or contest the payment of death losses would oftentimes be too great to be resisted.

Under such a constitution as that of appellant, the loss of good standing must be shown by some official action on the part of the organization. The words of the certificate are: "provided the said member is in good standing *in the Order.*"

The order is a corporate body. The attitude of a corporate body towards one of its members can only be known through its action as such corporate body. The only proper evidence of such action will be the records or proceedings of the organization itself. Section 2 of said article 13 contains a proviso, that, "for non-payment of dues, assessments or fines, a member may be dropped from membership without the formality of a trial as above set forth." It still remains true, however, that the act of "dropping" a member is the act of the corporate body, and such act can be proven only by the official proceedings of such body. In *Medical & Surgical Society of Montgomery Co.* v. *Weatherly,* 75 Ala. 248, the Supreme Court of Alabama, speaking of the power to terminate a membership for non-payment of dues, or other cause, says: "The rule of law is known to be, that this power resides generally in the body of every corporate society, that it is judicial in its nature, and must be exercised by a vote of the society expressing the corporate will, and ordinarily the records or minutes of the body must show, that the requisite steps were taken in compliance with the charter and by-laws of the corporation, after reasonable notice to the party charged, either express or implied."

The *Curd* case, already referred to, is distinguishable from the case at bar, because, in that case, the beneficiary, in his application for membership, not only agreed that compliance with the laws and regulations of the society should be necessary to entitle him to participate in the fund, but, in addition thereto, also agreed that violation of his pledge of total abstinence, *or* suspension, *or* expulsion for a violation of any of the laws, should operate as a forfeiture of his right to the fund; and because the certificate in the *Curd* case recited, that it was issued to the beneficiary upon the express condition, that he should faithfully maintain his pledge of total abstinence *and* comply with all the laws, rules and regulations. As the maintenance of the pledge of total abstinence was thus made a

special condition in the contract, the violation of such pledge was held to be a forfeiture of the right of recovery without trial and conviction.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*