Langnecker vs. Trustees of Grand Lodge A. O. U. W. of Wisconsin.

session moneys of the county to which he is not entitled, and he should refund them.

An error is alleged because the court did not by the judgment dismiss the complaint as to the first count, the demurrer to which was sustained. The supposed error is not, however, argued in the brief, and we do not feel called upon to notice it.

There will be no necessity for further proceedings in the court below. The judgment is excessive in a certain amount, viz. $423.05, with interest from the date of demand to the date of judgment, being in the aggregate $449.13. The judgment can be modified by this court, and affirmed as modified.

*By the Court.*— Judgment modified by deducting therefrom $449.13, and affirmed as so modified. The appellant will be entitled to tax and recover costs in this court.

LANGNECKER, Respondent, vs. THE TRUSTEES OF THE GRAND LODGE ANCIENT ORDER OF UNITED WORKMEN OF WISCONSIN, Appellant.

*September 3 — September 24, 1901.*

*Benefit societies: Void proceeding: Appeal to grand lodge: Refusal to receive assessments: Waiver of tender: Prohibited business: Expulsion: Forfeiture of beneficiary rights.*

1. An appeal from an inferior to a superior tribunal (in this case from the local lodge to the grand lodge of a mutual benefit society) to avoid the effect of an absolutely void proceeding is unnecessary.
2. Where a member of a mutual benefit society has been notified that the lodge will not receive any more money from him because he is no longer a member, his rights will not be prejudiced by a failure to tender payment of assessments subsequently made.
3. A by-law of a mutual benefit society providing that any member who shall after a certain date enter into the business of selling liq-

Langnecker vs. Trustees of Grand Lodge A. O. U. W. of Wisconsin.

uor by retail shall be expelled from the order, applies to a member not actually engaged in the prohibited business at the time mentioned, even though he had been so engaged at the time his certificate was issued.

4. Where notice and a hearing are required in such a case, by the terms of the insurance contract, before expulsion can take place, affirmative action to that end is essential to forfeit the rights of the beneficiary, so far as such rights depend on mere membership of the insured in the order.

5. Where the insurance contract expressly provides that there shall be no liability on the beneficiary certificate unless the member shall in every particular comply with all the laws of the order, a violation of any such law by a member *ipso facto* terminates all liability under his certificate.

6. A by-law of a mutual benefit society providing that any member who thereafter engages in the sale of intoxicating liquors shall be expelled from the order, by necessary implication prohibits members from entering into such business.

APPEAL from a judgment of the circuit court for Buffalo county: E. W. HELMS, Circuit Judge. *Reversed*.

Action to recover on a benefit insurance certificate. The trial was by the court. The facts found were, in effect, that in October, 1881, upon the written application of Emil Richter representing among other things that he was a saloon-keeper, defendant, a duly organized benevolent association authorized to do a life insurance business on the mutual assessment plan, accepted the applicant as a member and issued to him a certificate in due form; that by the terms of the application Richter promised, among other things, to comply with all the laws, regulations, and requirements of defendant existing at the time of the issuance thereof or thereafter made, and performance of that promise was made a condition of the enjoyment of any benefit under the insurance contract; that May 2, 1882, the assured married the plaintiff and thereupon a new certificate of membership in the defendant order was issued in place of the one before mentioned, the only change being the substitution of the wife and children of the assured as beneficiaries for the per-

sons originally named in the contract; that Richter paid his dues to the local lodge of defendant according to the terms of his contract and performed his obligations up to the month of September, 1894; that he ceased to be a saloon-keeper prior to the year 1885, but re-entered such business July 1, 1894, and continued therein till September 5, 1897, when he died; that when Richter became a member of the defendant order its laws permitted him to a conduct a saloon business, but in June, 1893, a by-law was regularly adopted to the effect that, if any member thereof should engage in such business after August 1, 1893, he should be expelled from the order, which by-law has ever since been in force; that August 11, 1894, Richter, without notice or opportunity to be heard, was expelled from the order by a resolution of the local lodge of defendant, to which he belonged; that defendant is made up of a grand and subordinate lodges; that the subordinate lodge to which Richter belonged, by the terms of the insurance contract, was entitled to regularly collect of him one dollar every three months, and the continuance in force of his membership certificate was dependent upon payment of such dues and of assessments made by the grand lodge in accordance with the rules of the order; that it was customary and rulable for the local lodge to collect the assessments made by the grand lodge; that there were two such assessments in August, 1894, which were paid by Richter to the proper officer of the local lodge, called the "financier;" that three assessments were made in September, 1894; that Richter tendered to the financier of his lodge the September assessments, but his tender was refused upon the ground that he was no longer a member of the order; that Richter's membership was included in those assessed up to and inclusive of January, 1895, notice of the assessments being, according to the laws of the order, published in its official paper, a copy of which was regularly mailed to him; that the notice was to

the effect that it would come to suspended members, but that the sending thereof to them was not intended as a recognition of them as belonging to the order; that the notice also contained the following, which was in accordance with the insurance contract: "You are hereby notified that you must pay the above assessment on or before the 28th day of the month or your beneficiary certificate will stand suspended and in the event of your death will be void." The dues of the local lodge and the assessments made by the grand lodge, not paid by Richter, amount to $85.75.

From such facts the court found that Richter was a member of the defendant order in good standing at the time of his death; that the procedure required to be followed in case of the expulsion of a member not having been followed, the proceedings in that regard were void, and that plaintiff was entitled to recover the amount promised to the beneficiary by the terms of the insurance contract, less $85.75.

The laws of the order, which were a part of the insurance contract, included the following:

"Any member . . . upon neglecting or refusing to pay his dues [to the grand lodge] for a period of six months shall be reported to the [grand] lodge by the financier, and the master workman shall, unless otherwise directed by the lodge, thereupon declare such member suspended from the order."

"Any member failing or neglecting to pay all assessments made upon him for the beneficiary fund . . . on or before the 28th day of the month in which said assessments are made, shall forfeit all his rights as such member, shall stand suspended from all the rights, benefits, and privileges of the order from and after that date, and shall not be reinstated except as herein provided."

Judgment was rendered in favor of plaintiff.

*C. M. Masters*, for the appellant.

For the respondent there was a brief by *Robt. Lees* and *Theo. Buehler*, and oral argument by *Mr. Buehler*.

MARSHALL, J.　It is conceded that the proceeding to expel Richter from defendant order was void, but it is said his remedy was by appeal.　No reason is perceived why the rule does not apply, as contended by respondent's counsel, that an appeal from an inferior to a superior tribunal to avoid the effect of an absolutely void proceeding is unnecessary.　So far as we have been able to discover, the courts that have passed upon the question have so held.　*Glardon v. Supreme Lodge K. of P.* 50 Mo. App. 45; *Mulroy v. Supreme Lodge K. of H.* 28 Mo. App. 463; *Hall v. Supreme Lodge K. of H.* 24 Fed. Rep. 450.　The text-writers state the law likewise.　Niblack, Benefit Societies, 101.　The principle seems so elementary that we are not required to resort to authority to support it.

But it is said by appellant that, conceding the expulsion was void, Richter ceased to be a member for failure to pay the assessments that became chargeable to his membership subsequent to those which were tendered and refused.　The conclusive answer to that is that the assured, having been notified that the lodge would not receive any more money from him because he was no longer a member thereof, was not bound to offer to pay assessments subsequently made.　The provision of the insurance contract rendering it void for failure to pay assessments contemplated a readiness on the part of the assurer to receive the amount of assessments when seasonably tendered; and a refusal in that regard upon grounds in their nature continuous suspended the operation of such provision till notice was brought home to the assured that the attitude of the assurer had changed.　There is abundant authority to that effect, but as this court has very recently considered the subject, reference to authority elsewhere is unnecessary.　In *Guetzkow v. Mich. M. L. Ins. Co.* 105 Wis. 448, Mr. Justice DODGE, speaking for the court, said:

"The rule of law is maintained with great unanimity that one party cannot predicate a forfeiture upon an omission by

the other which his own conduct has helped to bring about; that a declaration that a policy of insurance is already forfeited will constitute a sufficient justification for the omission to tender subsequently accruing premiums or instalments, upon the ground that the assured is justified in believing that no tender would be accepted, and the formality is therefore unnecessary."

It follows that Richter was a member of the *Order of United Workmen* at the time of his death. But appellant insists that, conceding such to be the case, respondent was not entitled to recover, since it was not disputed that Richter entered into the business of selling intoxicating liquor as a beverage subsequent to August 1, 1893, contrary to the provision of the insurance contract prohibiting him from so doing, and that he remained in such occupation up to the time of his death; that for such violation of the laws of the order the provision of the contract of insurance, to the effect that there shall be no liability upon any certificate of membership if the member shall be guilty of having violated any law of the order or is not in good standing at the time of his death, extinguished all liability under the certificate. Respondent answers that proposition by saying that Richter was engaged in the business of selling intoxicating liquor as a beverage at the time his membership commenced; that though it was competent for the order to make outstanding certificates of membership subject to laws created by its governing body subsequent to the issuance thereof, the law invoked by appellant was not intended to affect members circumstanced as Richter was; that it was aimed at persons entering into the business of selling intoxicating liquor as a beverage who were not so engaged at the time of the passage of the law or had not theretofore during their membership been in such business; that persons who had been in such business during their membership and prior to the passage of such law were permitted to

continue therein or go out of and subsequently re-enter it at pleasure. The language of the law is as follows:

" Any member of the order who shall after August 1, 1893, enter into the business of selling by retail, of intoxicating beverages, shall be expelled from the order."

. That seems plain. There is no uncertainty either as to its meaning or purpose; therefore there is no room for the application of rules of construction. Counsel would have the law read as if a particular class of members of the order were excepted from its provisions. We can see no justification for ingrafting such an exception upon a plain contract by judicial construction. The law plainly applied to all members of the order not engaged in the prohibited business at the time mentioned therein, and Richter had not been so engaged for some nine years.

It follows that Richter, at the time of his death, was a member of defendant order and in good standing so far as any affirmative action on its part indicates to the contrary, but was nevertheless guilty of having violated one of its laws for which his expulsion from the order was expressly required upon proper proceedings being had for that purpose. No discretion rested with the governing body of the order having jurisdiction of the matter, to expel or not to expel him. Upon the subject being presented for action in the manner provided by the laws of the order there was room for action in but one way. Counsel for respondent contends that regardless of that, affirmative action by the order in the lifetime of Richter was essential to forfeit the rights of the beneficiary under the insurance certificate; that Richter was a member of the order when he died and presumably in good standing; that the contrary could not be legitimately shown otherwise than by the records of the order; that death ended the power of the order to take such action and that thereby the rights of the beneficiary became fixed. So far as the rights of the beneficiary depend on mere membership

of Richter in the order, counsel's position is unquestionably sound.   Under the insurance contract expulsion could not take place except upon notice and hearing in the manner provided in the by-laws.   Obviously, since such proceedings were impossible after the death of the assured, the termination of his membership *nunc pro tunc* was impossible. Courts have frequently held under similar contracts that the status of a member cannot be shown so as to avoid liability on the certificate or policy of insurance after his death otherwise than by showing by the records of the order that appropriate proceedings were had by it during his lifetime. *Olmstead v. Farmers' M. F. Ins. Co.* 50 Mich. 200; *Baker v. Citizens' M. F. Ins. Co.* 51 Mich. 243.

But appellant's counsel contends that the by-law exempting it from all liability upon the certificate in case of any violation by the member to whom it was issued of any law of the order, is self-executing; that while social benefits in the order depended upon membership therein, the liability to the beneficiary named in the certificate depended upon both membership of the assured in good standing at the time of his death and freedom of any violation by him of the laws of the order.   That contention has not been satisfactorily answered by respondent's counsel, either by argument or by authority.

Whether Richter's transgression of the law of the order *ipso facto* terminated all liability under his certificate of membership depends entirely upon whether that is what the parties to the insurance contract agreed to. . *Freckman v. Supreme Council R. A.* 96 Wis. 133; Niblack, Benefit Societies (2d ed.), § 289.   In disposing of questions of this kind courts must not lose sight of the fact that they do not make insurance contracts for parties, and that in dealing with such a contract their duty is the same as when dealing with any other contract; that they must determine the intention of parties from the words such parties chose to use to ex-

press such intention, and give effect thereto so far as the judicial reading does not violate any rule of language or of law; that courts have no right to depart from that line by twisting words out of their natural and sensible meaning for the purpose of saving anyone from the consequences of what may seem to be a harsh stipulation. So it is useless to refer to cases as ruling the question under consideration or as bearing thereon in which the contracts considered were essentially different from the one before us.

The learned counsel for respondent seem not to reply at all in their printed brief to the contention that liability under the certificate was terminated by a violation of the law of the order, except by pointing to the language which shows that affirmative action on the part of the order was necessary to terminate membership, paying little or no regard to the idea that the contract expressly provided for a forfeiture of all liability under the insurance feature of the membership, without necessary loss of social benefits, by actual suspension or expulsion therefrom. The exact wording of the provision of the certificate which seems to apply is as follows:

"No liability for the payment of any money from this fund shall arise by virtue of any beneficiary certificate, or certificate of membership, or otherwise, unless the member of the order named in such certificate shall, in every particular, while a member of the order, comply with all the laws, rules, and requirements thereof; and shall, at the time of death, be a member of said order in good standing."

That law was, in effect, embraced in the certificate of membership in the following language:

"This certificate is issued upon the express condition that Emil Richter shall in every particular while a member of said order comply with all the laws, rules and requirements thereof."

When we consider the quoted by-law in connection with the language of the certificate and the following language

in the application for membership, "I agree that compliance on my part with all the laws, regulations and requirements which are or may be hereafter enacted by said order is the express condition upon which I am entitled to participation in the beneficiary fund and to have and enjoy all the other benefits and privileges of said order," we have a contract about as plain as language can express it, under which noncompliance with any law of the order *ipso facto* terminated all liability thereunder. In most if not all of the cases where the contract considered provided that nonpayment of dues or any violation of any other requirement of the order should terminate the transgressor's membership or his right to participate in the insurance fund of the order, it was held that the provision was self-executing, requiring no affirmative action of the order to terminate its liability. In all of such cases there were laws of the order also, as in this case, providing for a trial of the guilty member and his punishment by suspension or expulsion or in some other way. The fact in that regard was not the turning point, but the question of whether the contract of insurance provided for its termination solely by the act of the assured.

In *High Court I. O. F. v. Zak*, 136 Ill. 185, the certificate considered contained this provision:

"This certificate is issued . . upon condition that the said member complies . . . with the laws, rules, and regulations now governing said order or that may hereafter be enacted by the High Court. These conditions being complied with the said High Court . . . hereby promises," etc., ". . . provided that said member is in good standing in this order at the time of his death."

The constitution of the order defined what should constitute a member thereof in good standing, and in close connection therewith provided that any member not coming up to the constitutional standard, "upon due trial and conviction thereof shall be reprimanded, suspended, dropped, or expelled as the court or other lawful authority may

determine." The court held that, looking to all the provisions of the insurance contract, it provided that good standing should be the test of the right to the benefits under the insurance certificate and that no penalty could be visited upon a member for any violation of its laws save upon trial and conviction by the law department of the order; hence, that while good standing was a requisite to liability upon the certificate of membership, the only proof admissible to overcome the presumption in favor of such standing was some proper corporate action of the order had during the life of the member whose conduct was in question. At the same time the court was careful not to impair the force of the decision in *Supreme Council R. T. v. Curd,* 111 Ill. 284, where a contract substantially the same as the one before us was considered and it was held that a violation of the law of the order *ipso facto* terminated its liability to the beneficiary of the transgressor. The court said:

"The *Curd Case* is distinguishable from the case at bar because in that case the assured in his application for membership not only agreed that compliance with the laws and regulations of the society should be necessary to entitle him to participate in the fund, but in addition thereto also agreed that violation of his pledge of total abstinence, or suspension or expulsion for a violation of any of the laws, should operate as a forfeiture of his right to the fund, because the certificate in the *Curd Case* recited that it was issued to the beneficiary upon the express condition that he should faithfully maintain his pledge of total abstinence and comply with all the laws, rules and regulations."

It will be readily noticed that the contract in the *Curd Case* was not as strong in favor of the order as the one before us, and, turning to the opinion of the Illinois court in such case, we observe that it was there pointed out, and the decision turned on the fact, that loss of membership by the affirmative action of the society and violation of the contract of insurance were by its terms made independent

grounds of forfeiture of the right to participate in the beneficiary fund of the society.    The court said:

"The words 'shall faithfully maintain his pledge of total abstinence and comply with all the laws, rules, regulations, and requirements of said order,' are used conjunctively, and all these requirements are necessary to be observed to entitle the beneficiary to recover upon the certificate, and so it must follow that the omission of either will bar a recovery. But the certificate proceeds, after the language quoted: 'And in case he is in good standing at the time of his decease, then the person or persons hereinafter named shall be entitled,' etc., and the argument upon behalf of the defendant in error assumes that these words are equivalent to saying that if he is not tried and convicted of violating his pledge," etc.    " . . . Had it been designed to make trial and conviction a condition precedent to forfeiture, we must presume that it would have been so said; but nowhere is language used that can fairly be construed to mean this. . . . The violation of this pledge is cause for expulsion . . . and it is also a cause for forfeiture of rights and benefits under the certificate."

That case was followed by *High Court I. O. F. v. Zak* when it was first heard on appeal, 35 Ill. App. 613, as well as when it was subsequently heard in the supreme court. The appellate court said:

"It needs no conviction or expulsion by the lodge in such a case to bar the claim on the certificate, because, by its terms, proof of breach of the specific condition upon which it was issued, *ipso facto*, forfeited all claim under it."

To the same effect are *Supreme Council R. L. v. Moerschbaecher*, 88 Ill. App. 89; *Hogins v. Supreme Council C. of R. C.* 76 Cal. 109; *McMurry v. Supreme Court K. of H.* 20 Fed. Rep. 107.

It seems clear that effect must be given to the plain terms of the insurance contract, that proof of a violation of its provisions is a defense to any action to recover thereon. Such provision is as clearly self-executing as are those frequently met with which provide that if a member fails to pay any assessment upon his membership, made in accord-

ance with the insurance contract, he shall from the time of such failure stand suspended and no longer a member of the order. The one says compliance with all the laws, rules, and regulations of the order is a condition precedent to any liability thereon; the other that payment of dues according to the contract is a condition precedent to the continuance of the membership.

No suggestion has been made which from any standpoint reasonably supports a contrary view to that above expressed, except that the law adopted by appellant merely required the expulsion of members as a penalty for entering into the business of selling intoxicating liquor as a beverage, and need not necessarily be construed as prohibiting members from entering into such business, and that therefore the promise of Richter that he would obey all the laws, rules, and requirements of the order as a condition precedent to liability to his beneficiary, does not necessarily include a promise not to enter into the business mentioned in the law. We are not inclined to treat that suggestion as unworthy of consideration. The by-law did not expressly prohibit members from entering into the business of vending intoxicating liquors. However, it seems that no more strict rules of construction should be applied to it than are ordinarily applied to penal statutes, and we may venture safely to say that such statutes are generally held by necessary implication to prohibit those things that are made punishable by them; that such implied prohibition exists in all cases where the purpose of the law is to make the act punishable against which it is directed. *Lewis v. Welch,* 14 N. H. 294; *Bancroft v. Dumas,* 21 Vt. 456; *Hallett v. Novion,* 14 Johns. 273; *Mitchell v. Smith,* 1 Bin. 110. In 1 Parsons, Cont. (8th ed.), 458, it is said that Sir JAMES MANSFIELD established a more reasonable rule than had theretofore existed in England, to the effect that in all cases where a statute provides a penalty for an act, that is a

prohibition of the act, and that such "has always been the prevailing, if not the uncontradicted, rule of law on this subject in this country."

We must hold that Richter's violation of the law of the appellant order on the subject of entering into the business of selling intoxicating liquors forfeited all benefits under his certificate of membership, and that the circuit court should have rendered judgment in favor of appellant.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment dismissing the complaint with costs.