## THE ROYAL CIRCLE

### v.

## ELIZABETH ACHTERRATH.

*Opinion filed October 26, 1903.*

1. BENEFIT SOCIETIES—*it is presumed that deceased was sane when he committed suicide.* In an action on a benefit certificate, if the proof shows that the deceased committed suicide but there is no proof that he was insane, it will be presumed that he was sane.

2. SAME—*"incontestable clause" has the effect of a short statute of limitations.* A clause in a benefit certificate making the certificate incontestable for fraud in procuring same after the lapse of a reasonable period is valid, as creating a short statute of limitations.

3. SAME—*"incontestable clause" is liberally construed in favor of the insured.* The "incontestable clause" of a benefit certificate is to be liberally construed in favor of the insured.

4. SAME—*what not a loss of "good standing."* If a by-law of a benefit society makes certificates incontestable after two years if the member continues "in good standing," obeys the rules and laws and pays his dues and assessments, the death of such member by suicide is not a loss of "good standing," where another by-law requires corporate action by the society to deprive him thereof.

5. SAME—*good standing evidenced by certificate is presumed to continue.* The certificate issued to a member of a benefit society is evidence of his good standing at the time of its issue, and such good standing is presumed to continue until the contrary is shown.

6. SAME—*suicide is not a crime.* Suicide by a member of a benefit society does not render the certificate void under a provision of the constitution of the society making a certificate void if the insured dies on account of violating any criminal law of the State, since suicide is not a crime under the laws of this State.

7. SAME—*when suicide is not violation of rules.* Suicide by a member of a benefit society will not be held a violation of his agreement to obey the rules of the order, where the by-law making the certificate incontestable after two years if he did not violate such agreement is uncertain whether his agreement that the society was not to be liable in case of suicide was embraced in such by-law.

*Royal Circle* v. *Achterrath*, 106 Ill. App. 439, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Hancock county; the Hon. JOHN J. GLENN, Judge, presiding.

This is an action of assumpsit, brought in the circuit court of Hancock county by the appellee, Elizabeth Achterrath, against the Royal Circle, a fraternal insurance society, to recover on a certificate, issued by said society to one William Achterrath, husband of plaintiff below.

The certificate sued upon was dated January 19, 1899, and provides as follows: "This certificate is issued to William Achterrath, a member of Augusta Circle No. 194, The Royal Circle, located at Augusta, Illinois, upon evidence received from said circle that said member is a contributor to the benefit fund of this order, upon condition that the statements and representations made by said member in the petition for this membership in said circle, and the statements certified to by him to the worthy medical examiner, both of which are filed in the supreme secretary's office, be made a part of this contract, and upon condition that the said member complies in the future with the laws, rules and regulations now governing the said circle and fund, or that may hereafter be enacted by the supreme circle to govern said circle and fund. These conditions being complied with, the supreme circle of the Royal Circle hereby promises and binds itself to pay out of its benefit fund to Elizabeth Achterrath, wife, not to exceed $2000.00 in accordance with and under the provisions of the laws governing said fund, upon satisfactory evidence of the death of said member, and upon the surrender of this certificate; or not to exceed $1000.00, in accordance with and under the provisions of the laws governing said fund, upon satisfactory evidence of the permanent total disability of said member by accident; or not to exceed $500.00 in the event of the loss of a foot or a hand by accident; provided always, that said member is in good standing in this order at the time of said death or disability; and provided also, that this certificate shall not have been surrendered by said member, and another certificate issued at the request of said member, in accordance with

the laws of this order." The certificate was signed by the supreme president and the supreme secretary, and the corporate seal was attached; and written upon the same were the following words, to-wit: "I accept this certificate on the conditions named herein." On November 22, 1899, the sum of $500.00 was paid on the certificate on account of the loss of one hand by the insured, as appears from an endorsement on the certificate, leaving $1500.00 due thereon.

May 8, 1901, William Achterrath, the insured, came to his death by suicide, he having shot himself in the head with a revolver at his home in Augusta township.

The declaration sets out the certificate *in hæc verba* and avers, among other things, that William Achterrath died on May 8, 1901, and that he was at that time in good standing and had complied with all the laws, rules and regulations of the society; and that his widow within a reasonable time furnished appellant with satisfactory evidence of his death, and offered to deliver up the certificate upon payment to her of the amount due thereon, etc.

The defendant below filed a plea of the general issue, and two special pleas. The second plea averred that it was provided in the contract of insurance that, if the insured should die by self-destruction, the certificate should be null and void, and that William Achterrath did die by self-destruction, and, therefore, the certificate and contract were of no binding effect on the defendant, and that defendant was thereby released from said contract. The third plea alleged that, in and by the application for membership signed by William Achterrath, which was a part of the contract of insurance, it was provided that, if he should die by suicide, whether sane or insane, the defendant should not be held liable under the contract; and avers that he did commit suicide, whether sane or insane, and, therefore, the contract and certificate were wholly null and void. Issue was joined upon the plea of general issue.

Two replications were filed to the second plea, the first, denying that it was provided in the contract, that self-destruction of Achterrath should render the contract void, and the second, setting up that Achterrath did not die by self-destruction. The defendant below joined issue upon these replications. To the third plea a replication was filed to the effect that Achterrath did not make application for membership, in which it was agreed if he should die by suicide, whether sane or insane, the defendant should not be held liable; and the further replication was filed, that Achterrath did not commit suicide. Issue was joined upon these replications.

The appellee, the plaintiff below, filed a replication, spoken of as replication No. 6, to the second and third pleas. In this replication, after referring to the organization of the society or order, and to its adoption of a constitution and by-laws; and after referring to section 1 of article 1 of the constitution, providing for the name and location of the association, and to section 1 of article 4, providing that the supreme circle may grant authority to organize any number of local circles, etc.; and after setting forth that, in article 2 of the constitution, the object of the society was stated to be, first, for social and fraternal benefits to all acceptable white persons between the ages of eighteen and fifty-nine years; second, to provide for the families of the deceased members, and to assist the disabled from old age or accident by equitable assessments upon its members; and third, to provide death benefits to all its beneficiary members, etc.; and after referring to section 1 of article 3 of the constitution, providing that white persons of either sex, who shall pass the required medical examination, may become beneficial members by complying with all the laws and regulations of the order, as set forth in its by-laws and the benefit certificate, it is then averred that, by section 1 of article 16 of the constitution of the order, it is provided that, "after two years from the date of a

certificate, the member continuing in good standing, the only conditions binding upon the member are the agreements as to his full compliance with the laws and rules of the association, and that all dues and assessments shall have been paid as required. In all other respects, the payment of any sum due under any certificate, issued to a member, shall be indisputable and incontestable." The sixth replication then avers that William Achterrath became a member of the order under the provisions of the constitution and by-laws in force at that time, and at the time the certificate was issued, and so remained during his lifetime; that he was in good standing in the order at the time of his death, and that, under said section 1 of article 16, the amount due plaintiff is incontestable and indisputable by defendant, and that defendant is estopped from refusing payment on account of Achterrath's death by self-destruction.

The plaintiff below filed a further replication, spoken of as replication No. 7, to the second and third pleas, averring that, after the defendant knew of Achterrath's death by self-destruction, it collected and accepted from the plaintiff eighty-five cents, the full amount of one assessment levied against Achterrath, and still retains the money, and thereby waived the provision against suicide, and cannot claim exemption on account thereof.

The defendant below, appellant here, filed a rejoinder to the sixth replication averring that, while it admitted its incorporation, and that the constitution and by-laws provided the things set forth in the replication, yet Achterrath did not make full compliance with the laws, rules and regulations, in that he committed suicide or self-destruction; that he died by his own hand, willfully and intentionally shooting himself with a pistol, and that, therefore, section 1 of article 16 is not binding on the defendant, but rendered the contract null and void, wherefore Achterrath lost his good standing, and was not at his death in good standing; and that the defendant was

discharged from liability under the contract. The plaintiff below demurred to this rejoinder to the sixth replication, and the demurrer was sustained. The defendant below then filed its amended rejoinder to the sixth replication, therein admitting the incorporation of the plaintiff under the laws of Illinois, and that its constitution and by-laws provided the things set forth in the replication, but alleging that William Achterrath was not in good standing at the time of his death. To this rejoinder plaintiff added the *similiter*.

Defendant below filed a rejoinder to plaintiff's seventh replication, setting up that it was provided by section 1 of article 12 of the constitution and by-laws of defendant, which were a part of his contract, that all assessments are due and payable to the local secretary of the circle, to which the member belongs, on the first day of each month, and that the assessment, referred to in the seventh replication, was due and payable on May 1, 1901, prior to the death of Achterrath; that defendant had a right to accept it; that defendant had no knowledge of the manner of Achterrath's death until after the assessment was due and payable, and, by receiving it, did not waive any part of the contract providing that self-destruction should avoid the contract. Plaintiff joined issue upon this rejoinder.

The cause was tried before the court and a jury. The jury found a verdict for the plaintiff below, and assessed her damages at $1500.00. Motion for new trial was sustained, and the verdict was set aside. A second trial then took place with the same result, to-wit, verdict and judgment in favor of plaintiff below for $1500.00, and costs. The motion for new trial after the rendition of the second verdict was overruled. Upon appeal to the Appellate Court for the Third District, the judgment of the circuit court in favor of plaintiff for $1500.00, and costs, has been affirmed. The present appeal is from such judgment of affirmance.

Upon the trial, the plaintiff below not only introduced the benefit certificate already set forth, but also the application of William Achterrath for membership in the circle, and the constitution and by-laws of the circle in force January 21, 1901. She also introduced in evidence the proofs of loss, signed by her and made under oath to the supreme circle, in which she gave suicide as the cause of the death of her husband, to which proofs of loss was attached the sworn statement of the physician, procured by her to make medical proof of the death, which statement also gave suicide as the cause of the death. It also appeared in evidence that the original verdict of the coroner's jury was, that the insured "came to his death by two wounds in the head inflicted by his own hand," etc.

The eighth clause of the application of the deceased for membership in the order was as follows: "I further agree that this order shall not be responsible under this contract, if my health shall become impaired by the use of narcotics, or alcoholic, vinous, or malt liquors, or shall die in consequence of a duel, or by suicide, whether sane or insane, or by the hands of a beneficiary hereunder, (except by accident), or in consequence of the violation or attempted violation of the laws of any State or Territory of the United States." The ninth clause of the application, following immediately after the eighth clause above set forth, is as follows: "I agree to make punctual payment of all dues and assessments for which I may become liable, and to conform in all respects to the constitution, laws, rules and usages of this order now in force, or which may hereafter be adopted by the supreme circle thereof."

Section 5 of article 10 of the constitution of the order is as follows: "If a member dies in consequence of a duel, or by the hands of justice, or by the practice of any pernicious habit that obviously tends to shorten life, or by self-destruction, or by the use of intoxicating liquor, or by or on account of the violation of any criminal law

of any State, province or municipality, then, in all such cases, the certificate of membership shall be null and void, but the board of directors, if in their judgment the circumstances attending such death warrant it, may, at their option, without prejudice, pay any sum not exceeding the full amount thereof."

Section 1 of article 14 of the constitution provides as follows: "If a member becomes intoxicated or commits an offense against a member or the good name of the order, or violates the constitution or the laws of the order, or commits any dishonorable act, or is known to have had dishonorable or unchaste character or reputation at the time of his or her admission into the order, the person knowing it shall communicate the facts in writing, and the names of all the witnesses, to the worthy ruler of the local circle to which the offending member belongs, who shall at once appoint a committee of five discreet persons, members of the local circle, who shall proceed to investigate the matter, and report in writing the testimony, and all the facts bearing upon the case, whereupon the worthy ruler shall instruct the secretary to notify all the officers of the local circle to meet as a committee, and hear all the testimony on both sides. The accused shall be notified to appear to defend himself with witnesses. This committee of officers shall report their recommendations to the next meeting of the local circle, when final action will be taken. The committee's recommendation, adopted by a majority vote of the local circle, shall be final, but no such vote shall be taken unless notice of such meeting be sent to each member of the local circle."

Don E. Minor, Dunn & Kenney, and Risse & Risse, for appellant:

Where an insurance contract excepts as a risk death by insured's own hand, whether sane or insane, and also provides that it shall be, after three years, "incontest-

able and indisputable, except for fraud or non-payment
of dues," death by suicide more than three years after
date of certificate avoids liability on part of company.
*Hall* v. *Life Ass.* 19 Pa. Super. Ct. 31; *Life Ins. Co.* v. *Kelly*,
114 Fed. Rep. 268.

Suicide *per se* raises no presumption of insanity. *Dick-
erson* v. *Life Ins. Co.* 65 N. E. Rep. 694; *Grand Lodge* v. *Wie-
ting*, 168 Ill. 408.

Suicide is a moral offense and a crime, and though it
cannot be punished in this country by forfeitures, as it
could in England, yet this fact does not go to the nature
of the offense, but only to the penalty; it is *malum in se.*
24 Am. & Eng. Ency. of Law, 491; *Commonwealth* v. *Mink*,
123 Mass. 422; 1 Bishop on Crim. Law, 317; *Mittenwallner*
v. *Supreme Lodge*, 76 N. Y. Supp. 1001.

Suicide is a crime at common law, as the same is in
force in this State. Moore on Crim. Law, sec. 754; *Thomp-
son* v. *Reynolds*, 73 Ill. 14.

APPOLLOS W. O'HARRA, and STERLING P. LEMON, for
appellee:

Section 2 of article 16 of appellant's constitution, pro-
viding that after two years the certificate shall be indis-
putable and incontestable, overrides all other clauses in
the constitution and by-laws and in the application in-
consistent therewith, and the defense that the death of
the assured was by suicide cannot be made after the two
years had elapsed.   This is true, even if the application
and other sections of the constitution be held to provide
that suicide is not one of the risks assumed. *Mareck* v.
*Life Ass.* 62 Minn. 39; *Goodwin* v. *Life Assurance Society*, 97
Iowa, 226; *Life Ass.* v. *Payne*, 32 S. W. Rep. 1063; *Patterson*
v. *Life Ins. Co.* 100 Wis. 118; *Murray* v. *Life Assurance Co.*
53 L. R. A. 742; *Wright* v. *Life Ass.* 118 N. Y. 237; *Kline* v.
*National Ben. Ass.* 111 Ind. 492; *Simpson* v. *Life Ins. Co.* 115
N. C. 393; *Brady* v. *Insurance Co.* 168 Pa. 645; 2 Bacon on
Benefit Societies and Life Insurance, sec. 340; 19 Am. &

Eng. Ency. of Law, (2d ed.) 80; *Bates* v. *Life Ins. Ass.* 68 Hun, 144; 3 Joyce on Insurance, sec. 2644; *Fitch* v. *Life Ins. Co*, 59 N. Y. 570.

The issuing of a certificate of membership by a mutual benefit society is evidence of the holder's good standing in the order when it issued, and such good standing will be presumed to continue unless there is legitimate proof that it no longer exists. The burden of proving the loss of good standing rests upon the society. *Order of Foresters* v. *Zak*, 136 Ill. 185; *Order of Foresters* v. *Edelstein*, 70 Ill. App. 95; *Scheufler* v. *A. O. U. W.* 45 Minn. 256; 3 Am. & Eng. Ency. of Law, 1083; *Kumle* v. *Grand Lodge*, 110 Cal. 204; *Supreme Lodge* v. *Johnson*, 78 Ind. 110; *Mills* v. *Rebstock*, 29 Minn. 380.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In the case at bar, the proof shows that William Achterrath, to whom the benefit certificate sued upon was issued, died by his own hand. While the affirmative proof in the case does not show whether the deceased was sane or not at the time of his death, yet there is no proof that he was in such a state of mind as to be unconscious of the physical nature of the act of self-destruction, and, therefore, in the absence of any proof as to his insanity, all the presumptions are in favor of his sanity. (*Grand Lodge I. O. M. A.* v. *Wieting*, 168 Ill. 408; *Dickerson* v. *Northwestern Mutual Life Ins. Co.* 200 id. 270). It follows that, under the terms and provisions of the benefit certificate, and of the application for membership, and of the constitution and by-laws of the appellant association, except those contained in section 1 of article 16 of the constitution of the order, the appellant would not be liable to the appellee in this suit. Consequently, the real and substantial, and only material, question in the case is, whether the remaining $1500.00, due upon the face of the benefit certificate, is indisputable and incontestable by the ap-

pellant on account of the provision, contained in section 1 of article 16 of the constitution, that section being indisputably a part of the contract between the society and the insured.    In other words, is the appellant estopped from refusing payment on account of Achterrath's death by suicide, by reason of the "incontestable clause," quoted in the statement preceding this opinion as section 1 of article 16 of appellant's constitution?

Section 1 of article 16 provides that, "after two years from the date of a certificate, the member continuing in good standing, the only conditions binding upon the member are the agreements as to his full compliance with the laws and rules of the association, and that all dues and assessments shall be paid as required.    In all other respects the payment of any sum, due under any certificate issued to a member, shall be indisputable and incontestable."

Before proceeding to consider the proper meaning and interpretation of this incontestable clause, it may be well to refer to some of the authorities, which have considered the force and effect to be given to such clauses. · Courts have frequently recognized the validity of clauses, making policies of life insurance, and benefit certificates in benevolent associations, incontestable by the company or association under certain conditions.    Stipulations, to the effect that a policy, or certificate, shall become incontestable for fraud in procuring the same after the lapse of a specified period from the date of its issue, have been held valid as creating a short statute of limitations in favor of the insured, and as giving the insurer a limited period for the purpose of testing the validity of the policy.    In such cases, the company or association cannot set up fraud as a defense, if the period so fixed is sufficient to enable the company, or association, by the exercise of proper diligence to ascertain whether fraud has been practiced or not.    Such clauses, making a policy or certificate incontestable for fraud,

have fixed such period at from one to three years from
the date of the issuance of the policy, or certificate.
(*Massachusetts Life Ass.* v. *Robinson*, 104 Ga. 256; *Patterson* v.
*National Premium Mutual Life Ins. Co.* 100 Wis. 118; *Wright*
v. *Mutual Benefit Life Ass.* 118 N. Y. 237; *Clement* v. *New York
Life Ins. Co.* 101 Tenn. 22). "It has been held that, where
a policy provides, that it shall be incontestable after a
certain period, except for certain causes, death by sui-
cide not being one of the excepted causes, such clause
will apply in case of the death of the insured by suicide,
notwithstanding the policy contains another clause, pro-
viding that death by suicide is not a risk which the com-
pany assumes." (19 Am. & Eng. Ency. of Law,—2d ed.—
p. 80; *Mareck* v. *Mutual Reserve Fund Life Ass.* 62 Minn. 39;
*Goodwin* v. *Provident Savings Life Assurance Ass.* 97 Iowa,
226; *Simpson* v. *Life Ins. Co.* 115 N. C. 393; *Mutual Reserve
Fund Life Ass.* v. *Payne*, 32 S. W. Rep. 1063; *Murray* v. *State
Mutual Life Ins. Co.* 22 R. I. 524; *Kline* v. *National Benefit
Ass.* 111 Ind. 462). In interpreting incontestable clauses,
several well known rules of construction are adopted
as being peculiarly applicable to contracts of this class.
One of these rules of construction is, that such contracts
are to be liberally construed in favor of the insured.
In *National Bank* v. *Insurance Co.* 95 U. S. 673, it was said
that "the policy having been prepared by the insurers,
it should be construed most strongly against them." In
*Thompson* v. *Insurance Co.* 136 U. S. 297, it was said: "If
a policy is so drawn, as to require interpretation, and
to be fairly susceptible of two different constructions,
the one will be adopted that is most favorable to the in-
sured." (See also *Massachusetts Life Ass.* v. *Robinson*, 104
Ga. 277). In the American and English Encyclopedia of
Law (vol. 19,—2d ed.—p. 80,) it is said: "In regard to
matters, which would have the effect of defeating or
destroying the contract, if there is a reasonable doubt
as to the extent of the application of the incontestable
clause, it must be solved in favor of the beneficiary, and

stipulations in the policy to the contrary must yield. Thus it has been held that a clause in the policy, providing that 'if the terms of this contract be complied with, it shall be incontestable after one year from its date,' though the meaning is somewhat doubtful, will relieve the insured from the effect of a false warranty after the expiration of one year.  *  *  *  So, it has been held that, where a policy omits the 'suicide clause,'. but contains a clause making it absolutely incontestable from the date of its delivery and acceptance, except for non-payment of premiums or mis-statement of age, intentional suicide while sane, although technically a crime, cannot be set up as a defense under another clause of the policy, in effect providing that death 'in consequence of or in violation of law' is not a risk covered by the policy."

So, in *Mareck* v. *Mutual Reserve Fund Life Ass. supra,* it was said: "If there is a reasonable doubt as to the extent of the application of the 'incontestable clause,' it must be solved in favor of the beneficiary. This clause was inserted in the contract by the company itself. * * * Another reason why the insured might well understand the clause as meaning this, [that is, that the company agreed to waive the condition as to suicide after five years], and why the company itself may have intended it to have that meaning, is the fact that it is the custom of many life insurance companies to limit the operation of conditions as to suicide to a fixed period, and to make their policies thereafter incontestable on that ground." In the case last referred to of *Mareck* v. *Mutual Reserve Fund Life Ass.* there was written in ink across the face of the policy, and forming a part of it, the following: "After five years from the date of this certificate, it is incontestable for any cause, except non-payment of dues or mortuary assessments at the times and places, and in the manner herein provided, the age of the member being correctly stated in the application for this certificate;" the age of the insured was correctly stated in his

application, and all dues and mortuary assessments were duly paid up to the time of his death; and, more than five years after the date of the certificate, the insured came to his death by his own hand; and it was there held that the incontestable clause applied, and that the company was liable for the full amount named in the life insurance policy. In *Goodwin* v. *Provident Savings Life Assurance Ass.* 97 Iowa, 234, it appeared that, by the terms of the policy, it was incontestable after two years from its date, except for fraud in procuring it, subject, however, to stipulations regarding payments .of premiums and extra-hazardous occupations, and it was there said by the court: "The tenets established for the guidance of courts in such matters are well understood, and no one is better established than that in all cases the policy must be liberally construed in favor of the assured, so as not to defeat without a plain necessity, his claim for indemnity. And when the words used may, without violence, be given two interpretations, that which will sustain the claim and cover the loss should be adopted. * * * The proper construction of this policy, taken in connection with the application, we think, is that the policy does not cover death by suicide, occurring within two years from the date of its delivery, but that after two years it is incontestable, except upon the grounds stated therein. This construction will give effect to all the provisions of the policy, and as such a result is always sought for by courts in interpreting all classes of contracts, we are quite content with it. We are the better satisfied with this conclusion, because it seems that, in life insurance, certain companies limit the operation of the conditions as to suicide to a fixed period, and make their policies incontestable on that ground thereafter."

An application of the rules, thus announced in relation to these incontestable clauses in policies of insurance and benefit certificates, leads to the conclusion that

the appellant is estopped from denying its liability to the appellee upon the benefit certificate, here sued upon, by reason of the provision contained in section 1 of article 16 of the constitution. It is claimed by the appellant, that William Achterrath did not continue in good standing by reason of the fact that he committed suicide. When the constitution provides that, "after two years from the date of a certificate, the member continuing in good standing, the only conditions binding upon the member are the agreements," etc., it is not meant that, by the act of taking his life, the member does not continue in good standing. The meaning is, that he must continue to be in good standing during the period of two years after the issuance or date of the certificate, and up to the time of his death. The loss of good standing, as here contemplated, is not such loss as that occurring by the act of death, but the reference is to such good standing as exists up to the time of the death. The life of the insured is ended the moment the act of suicide is performed, and there is no interval for loss of good standing in the order. In the next place, section 1 of article 14 of appellant's constitution, as quoted in the statement preceding this opinion, provides for affirmative action to be taken by the order in case of any offense against the order being committed by the member. The accused must be given an opportunity to be heard, and evidence must be taken by a committee, and a report made to the lodge, and a vote had upon the report or recommendations of the committee. As the loss of good standing of the member must be established by a trial and conviction of the offense charged against him, it cannot be said that suicide is such a loss of good standing as is contemplated by section 1 of article 16, as no investigation or trial could occur to establish the loss of good standing after a member's death.

When a certificate of membership is issued to a member, that certificate is evidence of his good standing at

the time of its issue, and such good standing will be presumed to continue until there is proof that it no longer exists. A member is said to be in good standing when he complies with the laws, rules, usages and regulations of the order. Such compliance necessarily includes punctual payment of all dues and assessments, for which the member may become liable. Good standing also means good conduct, that is, freedom from the violation of those requirements, which indicate the benevolent purposes of the society, or express its intention to insist upon a high standard of character among its members. (*Independent Order of Foresters* v. *Zak*, 136 Ill. 185; *Royal Templars of Temperance* v. *Curd*, 111 id. 284). The words of the certificate here sued upon are as follows: "Provided always that said member is in good standing in this order at the time of said death." In relation to words of a similar kind, we said, in *Independent Order of Foresters* v. *Zak, supra:* "Under such a constitution as that of appellant, the loss of good standing must be shown by some official action on the part of the organization. * * * The order is a corporate body. The attitude of a corporate body towards one of its members can only be known through its action as such corporate body. The only proper evidence of such action will be the records or proceedings of the organization itself." It is clear that, inasmuch as loss of good standing on the part of a member must be thus established by corporate action, such loss of good standing does not include the act of the member in committing suicide. (See, also, Niblack on Accident Insurance and Benefit Societies,—2d ed.—secs. 155-157, inclusive; also sec. 323). At section 323 of the second edition of Niblack's work on Accident Insurance and Benefit Societies, the author says: "Proof, that the society recognized the decedent as a member up to a short time before his death, in connection with the presumption that all persons follow such laws, rules and regulations as they are subject to, is sufficient evidence of the good

standing of decedent to maintain the action." It is not denied, in this case, that the deceased, William Achterrath, paid all his dues, and conformed in every respect to such requirements of the society as entitled him to a good standing up to the time of his death, independently and outside of the fact that he died by his own hand. (2 Bacon on Benefit Societies and Life Insurance,—2d ed. —sec. 414).

Again, the constitution and by-laws of the appellant society, which are a part of the contract made by it with the deceased, recognize a distinction between loss of good standing in the society, and self-destruction. A member's certificate may become void by his loss of good standing in the order, but such loss of good standing is determined, as a general thing, by a trial and conviction in the order. When, however, a member takes his own life, no trial can be had, and none is required by the constitution of the order. The act of suicide works a forfeiture of the certificate, not because the member is thereby deprived of his good standing in the order at the time of his death, but because, aside from all question of good standing, it is especially provided that suicide in and of itself shall defeat a recovery. If the intention was, that loss of good standing in the order always occurred when death was from self-destruction, then there would be no occasion for providing especially against suicide. In such case, it would only be necessary to provide generally that loss of good standing should work a forfeiture of the policy; and if the commission of suicide is included in the loss of good standing, the special provisions against suicide would be unnecessary.

Counsel for appellant, however, claim that suicide is a crime, and that, therefore, the appellant is not liable under the provisions of its constitution, which make the certificate null and void, if a member dies on account of the violation of any criminal law of any State, province or municipality. But suicide is not a crime under the

statutes of this State.   In New York, although suicide
is not a crime, an attempt to commit suicide is a crime,
but it has been held in that State, that the fact, that a
member killed himself, is not a defense to an action un-
der a provision of the contract that it should be void if
he should die "in violation of, or attempt to violate, any
criminal law."   (*Darrow* v. *Family Fund Society*, 116 N. Y.
537).   In *Kerr* v. *Minnesota Mutual Benefit Ass.* 39 Minn. 174,
where a policy of insurance provided that, "if the assured
shall die in, or in consequence of, the violation of any
criminal law of any country, State or Territory in which
the assured may be, this certificate shall be null and
void," it was held that death by suicide is not within
the proper meaning of the policy, to be considered as the
violation of law therein referred to; and in that case it
was said by the Supreme Court of Minnesota: "And un-
der the general language here used, which must be con-
strued favorably to the assured and strictly as against
the company, the violation of law referred to in the pol-
icy ought not, we think, to be construed to mean or in-
clude suicide.   Suicide, though strictly a crime, is not
reckoned among offenses or violations of law, such as
the language of the policy would be commonly under-
stood to refer to."

Counsel for appellant also say that, while suicide
itself may not be a crime, yet the attempt to commit
suicide is a crime.   But "an attempt to commit crime im-
ports a purpose not fully accomplished to commit it.   It
is the attempt to commit suicide that is the crime, while
the taking of one's own life is no violation of the crimi-
nal law.   *   *   *   While the attempt to commit suicide is
a crime, the accomplishment of the purpose to do so is
not." (*Darrow* v. *Family Fund Society, supra*).   In the case
at bar, suicide was actually accomplished, and, there-
fore, it cannot be said that the deceased was guilty of
the attempt to commit suicide.   "If the act fails to ac-
complish its purpose, it constitutes an attempt, but if the

result of it is the consummation of the purpose, the act is not commonly designated as an attempt." (*Darrow* v. *Family Fund Society, supra*).

The benefit certificate, issued to the deceased, was issued January 19, 1899, and his death took place May 8, 1901, more than two years after the issuance of the certificate. Inasmuch as he continued to be in good standing up to the time of his death, the question arises as to the meaning of that part of section 1 of article 16, which reads as follows: "The only conditions binding upon the member are the agreements as to his full·compliance with the laws and rules of the association, and that all dues and assessments shall be paid as required. In all other respects the payment of any sum due under any certificate issued to a member, shall be indisputable and incontestable." After the expiration of the two years from the date of the certificate, the only conditions, binding upon William Achterrath, were the agreements as to his full compliance with the laws and rules of the association, and that all dues and assessments should have been paid as required. It is not denied that he paid all dues and assessments as required; and the only question remaining is, whether the agreements as to his full compliance with the laws and rules of the association include or exclude the provisions in regard to suicide and self-destruction.

The certificate in this case provides that the statements and representations, made by Achterrath in the petition or application for his membership in the circle, shall be made a part of the contract embodied in the certificate. When we look at the application for membership, we find two agreements embodied in the eighth and ninth clauses of the application, and following the one upon the other. By the first of these agreements, Achterrath says, "I further agree that the order shall not be responsible under this contract, if * * * I shall die * * * by suicide, whether sane or insane," etc.

By the terms of the second agreement, embodied in clause 9, he says: "I agree to make punctual payment of all dues and assessments for which I may become liable, and to conform in all respects to the constitution, laws, rules, and usages of this order now in force, or which may hereafter be adopted by the supreme circle thereof." By agreeing that the order shall not be responsible under the contract if he should die by suicide, whether sane or insane, he made an agreement which stood by itself, and was not dependent upon anything in the constitution, laws, rules or usages of the order. It is not to be presumed that, when he made the agreement embodied in the ninth clause of the application, it was intended to repeat what was agreed to in the eighth clause. Therefore, when by the ninth clause he agreed to conform in all respects to the constitution, laws, rules and usages of the order, the intention evidently was to refer to such parts of the constitution, laws, rules and usages of the order, as were not embraced in what was agreed to by the terms of clause 8. If the language in clause 9 was broad enough to cover the agreement, that the order should not be responsible in case of his death by suicide, then it was unnecessary to make the separate agreement in regard to dying by suicide, which is embodied in clause 8. In construing two clauses of a contract following one upon the other, a construction will not be adopted, which makes one a repetition of the other. It is true that, by section 5 of article 10 of the constitution, it is provided that "if a member dies * * * by self-destruction * * * the certificate of membership shall be null and void." But, all upon this subject that is embodied in section 5 of article 10 of the constitution, is contained in the agreement made by the insured in clause 8 of the application. It is, therefore, to be presumed that the agreement in clause 9 of the application did not refer to that part of section 5 of article 10 of the constitution, which refers to self-destruction.

When, now, we come to section 1 of article 16 of the constitution of the order, we find substantially the same language, which is embodied in clause 9 of the application. This application is made out upon a blank furnished by the order itself. Sections 1 and 3 of article 6 of the constitution refer to the subject of filling out the blank application by the applicant, and the signing of it by him, and to the report of the committee upon the application, and to the endorsement to be made upon the application, and to the approval of the application by the supreme medical director, and the return of the same to the office of the supreme secretary; and it is specifically stated, that "each application for membership and indemnity must be in writing on blanks furnished by the order." The agreements, embodied in clauses 8 and 9 of the application in the present case, are parts of a printed blank furnished by the order. Unquestionably, the language of this printed blank was in the mind of the order when it framed section 1 of article 16. The following words in that section, to-wit, "the agreements as to his full compliance with the laws and rules of the association," are substantially the same as the language used in clause 9 of the application. It is to be presumed, therefore, that the reference in section 1 of article 16 of the constitution is to the agreement, embodied in clause 9 of the application, and not to the agreement embodied in clause 8 of the application. This conclusion receives endorsement from the fact, that, in clause 9, the agreement is "to conform in all respects to the constitution, laws, rules and usages of this order," etc. The language in section 1 of article 16 is, "the agreements as to his full compliance with the laws and rules of the association." It will be observed that, in section 1 of article 16, the word "constitution" is left out, and the words "laws and rules" are used. The provision, that, "if a member dies * * * by self-destruction * * * the certificate of membership shall be null and void," is a part of

the constitution of the order, that is to say, it is section 5 of article 10 of the constitution. But the agreements, mentioned in section 1 of article 16, do not refer to the constitution, but only to the laws and rules of the association. It cannot be supposed, therefore, that section 1 of article 16 referred to that provision of the constitution, embodied in section 5 of article 10. It is true that the word, "rules," is sometimes used in a sense sufficiently broad to embrace such rules, as are embodied in the constitution, as well as in the by-laws. But, the omission of the word "constitution" from section 1 of article 16, when the same was used in clause 9 of the application, possesses a peculiar significance with reference to the interpretation of the language now under consideration.

It is thus apparent that, if, after two years from the date of the certificate, the member continued in good standing—and such was the fact in regard to William Achterrath—the only conditions after that date binding upon him were the agreements as to his full compliance with the laws and rules of the association, and not such other agreements, as were made independently and outside of the laws and rules of the association. It follows that the words, "in all other respects the payment of any sum due under any certificate, issued to a member, shall be indisputable and incontestable," were intended to mean that the benefit certificate should be incontestable after two years, except for certain conditions, among which suicide was not embraced. Our opinion is, that, here, the incontestable clause applies even though the insured came to his death by suicide. The only conditions, binding upon the member remaining in good standing after the lapse of the two 'years, did not embrace any agreements in regard to suicide or death by his own hand. At any rate, the language of section 1 of article 16 leaves it doubtful, whether such was the case or not. This being so, the rule applies that, where there is a reasonable doubt as to the extent of the application of

the incontestable clause, it must be solved in favor of the beneficiary.

The action of the trial court in ruling upon the evidence, and in the giving and refusal of instructions, was in accordance substantially with the views here announced. The judgments of the Appellate and trial courts were based upon the theory that, under section 1 of article 16, the appellant was estopped from refusing payment on account of Achterrath's death by self-destruction. We think that they adopted the correct theory, and gave the correct interpretation to section 1 of article 16.

Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*